In the

# United States Bankruptcy Court

### For the Northern District of Illinois

| | |
|---|---|
| IN RE:<br><br>**EMELIDA CORDOVA**,<br><br>DEBTORS. | CASE NO. 19-BK-6255<br>EASTERN DIVISION<br>CHAPTER 13 |
| **EMELIDA CORDOVA**, *ET AL.*,<br><br>PLAINTIFFS,<br><br>V.<br><br>**CITY OF CHICAGO**, AN ILLINOIS MUNICIPAL CORPORATION<br><br>DEFENDANT. | ADV. PRO. NO. 19-AP-684<br><br>HON. TIMOTHY A. BARNES<br><br>HEARING DATE: MAY 23, 2019<br>HEARING TIME:  9:30 A.M. |

# NOTICE OF CONSTITUTIONAL CHALLENGE

Pursuant to Rule 5.1 of the Federal Rules of Civil Procedure, made applicable to this proceeding through Rule 9005.1 of the Federal Rules of Bankruptcy Procedure, the City of Chicago, an Illinois Municipal Corporation, hereby files this Notice of Constitutional Challenge to the United States Bankruptcy Code with this Court. Specifically, in the City's Motion to Dismiss, attached hereto, the City challenges the con-

1

stitutionality of 11 U.S.C. § 362(a) under the due process clause of the Fifth Amendment.

Pursuant to Rule 5.1(a)(2), I, David Paul Holtkamp, certify that I served this Notice and Motion to Dismiss via certified mail to the Attorney General of the United States at the address below.

**Served via certified mail**
William Barr
Attorney General of the United States
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

**With cc. via First Class Mail to:**
John R. Lausch, Jr.
U.S. Attorney for the
Northern District of Illinois
219 S. Dearborn St., 5th Floor
Chicago, IL 60604

Respectfully submitted,

Edward N. Siskel
Corporation Counsel

By: s/ David Paul Holtkamp
David Paul Holtkamp
Asst. Corp. Counsel Supervisor
CITY OF CHICAGO,
DEPARTMENT OF LAW
Chicago City Hall
121 N LaSalle St., Ste. 400
Chicago, IL 60602
312.744.6967
David.Holtkamp2@cityofchicago.org

In the
# United States Bankruptcy Court
### For the Northern District of Illinois

| | |
|---|---|
| IN RE:<br><br>**EMELIDA CORDOVA**,<br><br>    DEBTORS. | CASE NO. 19-BK-6255<br>EASTERN DIVISION<br>CHAPTER 13 |
| **EMELIDA CORDOVA**, *ET AL.*,<br><br>    PLAINTIFFS,<br><br>        V.<br><br>**CITY OF CHICAGO**, AN ILLINOIS<br>MUNICIPAL CORPORATION<br><br>    DEFENDANT. | ADV. PRO. NO. 19-AP-684<br><br>HON. TIMOTHY A. BARNES<br><br>HEARING DATE:  MAY 23, 2019<br>HEARING TIME:  9:30 A.M. |

# NOTICE OF MOTION

**PLEASE TAKE NOTICE**, that on May 23, 2019 at 9:30 a.m. the undersigned shall appear before the Honorable Timothy A. Barnes or any other judge sitting in his stead, in Courtroom 744, at 219 S. Dearborn St., Chicago, Illinois, and then and there present the City of Chicago's *Motion to Dismiss*, a copy of which is attached hereto and served upon you.

DATED: MAY 16, 2019                    RESPECTFULLY SUBMITTED,

                                        THE CITY OF CHICAGO

                                        Edward Siskel
                                        Corporation Counsel

                                        By: /s/ David Paul Holtkamp
                                        Sr. Assistant Corp. Counsel

**Edward N. Siskel**
Corporation Counsel

David Paul Holtkamp (6298815)
Assistant Corporation Counsel Supervisor
**CITY OF CHICAGO, DEPARTMENT OF LAW**
121 N LaSalle St., Ste. 400
Chicago, IL 60602
Tel:    (312) 744-6967
Email:  David.Holtkamp2@cityofchicago.org

## <u>CERTIFICATE OF SERVICE</u>

I, David Paul Holtkamp, an attorney, hereby certify that on May 16, 2019, I caused a copy of the attached Motion and Notice of Motion to be served via the court's electronic noticing system for Registrants on those designated to receive such service as provided on the attached Service List.

/s/ David Paul Holtkamp

## <u>SERVICE LIST</u>

### <u>Registrants</u>
(Via CM/ECF)

- **Ross H Briggs**    r-briggs@sbcglobal.net, hrr73813@notify.bestcase.com

iii

In the
# United States Bankruptcy Court
### For the Northern District of Illinois

| | |
|---|---|
| IN RE:<br><br>**EMELIDA CORDOVA**,<br><br>DEBTORS. | CASE NO. 19-BK-6255<br>EASTERN DIVISION<br>CHAPTER 13 |
| **EMELIDA CORDOVA**, *ET AL.*,<br><br>PLAINTIFFS,<br><br>V.<br><br>**CITY OF CHICAGO**, AN ILLINOIS MUNICIPAL CORPORATION<br><br>DEFENDANT. | ADVERSARY NO. 19-AP-684<br><br>HON. TIMOTHY A. BARNES<br><br>HEARING DATE: MAY 23, 2019<br>HEARING TIME: 9:30 A.M. |

# CITY OF CHICAGO'S
# MOTION TO DISMISS

**Edward N. Siskel**
Corporation Counsel

David Paul Holtkamp (6298815)
Asst. Corp. Counsel Supervisor
**CITY OF CHICAGO, DEPARTMENT OF LAW**
121 N LaSalle St., Ste. 400
Chicago, IL 60602
Tel: (312) 744-6967
Email: David.Holtkamp2@cityofchicago.org

# INTRODUCTION

The complaint alleges that the City of Chicago (the "*City*") violated the stay by retaining possession of impounded vehicles in ten chapter 13 cases. Count II of the complaint seeks "FIVE MILLION DOLLARS" in punitive damages against the City. Count I seeks actual damages against the City. Count II should be dismissed with prejudice because the Bankruptcy Code clearly forbids the court from imposing punitive damages against a governmental unit, which the City certainly is. *See* 11 U.S.C. § 101(27). While this court may issue a "judgment awarding a money recovery," it may not issue an "award of punitive damages." *See* 11 U.S.C. § 106(a)(3). Congress very clearly and expressly provided special protection for governmental units from being subject to punitive damages.

Count I (and Count II) should also be dismissed with prejudice because the City did not violate the stay. First, the City has a possessory lien in the vehicle which under non-bankruptcy law may continue to be perfected by continued possession, and therefore the exception to the stay under § 362(b)(3) applies. *See* 11 U.S.C. § 362(b)(3); *In re Avila*, 566 B.R. 558, 562 (Bankr. N.D. Ill. 2017); *City of Chicago v. Kennedy*, 2018 WL 2087453, at *2 (N.D. Ill. May 4, 2018). Additionally, the City has impounded each Debtor's vehicles to enforce its traffic regulations and laws. Therefore the police powers exception under § 362(b)(4) also applies. *See* 11 U.S.C. § 362(b)(4); *see also, In re Hicks,* 582 B.R. 6, 13 (Bankr. N.D. Ill. 2018).

Finally, if neither of the exceptions to the stay apply, the application of § 362(a) as interpreted under *Thompson* violates the City's procedural due process rights under the Fifth Amendment. The City cannot be deprived of its possessory interest in the vehicle without a predeprivation hearing, which is not provided if the stay automatically and immediately orders the City deprived of that interest.

1

# ARGUMENT

The standard for a motion to dismiss under Rule 12(b)(6) is well-worn territory.[1] Assuming all facts in the complaint are true, "[r]ule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989); *see also, Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "This procedure, operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and factfinding." *Neitzke*, 490 U.S. at 326–27. "Like a battlefield surgeon sorting the hopeful from the hopeless, a motion to dismiss invokes a form of legal triage, a paring of viable claims from those doomed by law." *Iacampo v. Hasbro, Inc.,* 929 F. Supp. 562, 567 (D.R.I. 1996). The Debtor's claims here fail as a matter of law.

The City assumes, for the purposes of this motion only, that the following facts are true as alleged in the complaint.[2]

1. Six of the ten plaintiffs filed a petition under chapter 13 of the Bankruptcy Code. *See* Complaint, ¶¶ 6-15.

2. Four of the ten plaintiffs filed serial petitions under chapter 13 of the Bankruptcy Code. *See id.*, at ¶ 10 (2 cases), ¶ 11 (3 cases), ¶ 13 (2 cases), ¶ 14 (2 cases).

3. Prior to the petition date in each case the City had impounded the respective Debtor's vehicle due to unsatisfied vehicle fines and the City remained in possession on the petition date. *See id.,* at ¶¶ 6-15, 23.

4. After filing the petition in each case, the respective Debtor asked

---

[1] Rule 12(b)(6) provides that a complaint should be dismissed if it "fail[s] to state a claim upon which relief can be granted[.]". Fed. R. Civ. P. 12(b)(6). The rule applies to this case. Fed. R. Bankr. P. 7012(b).

[2] The City disputes many of the facts alleged, including that the City declined to turnover some of the vehicles upon demand. But the motion to dismiss stage is not the time to dispute facts.

the City to release the vehicle, the City declined to immediately do so, instead asking the Debtor to provide adequate protection for its interest prior to release. *See id.,* at ¶¶ 6-15.

## COUNT II SHOULD BE DISMISSED BECAUSE
## PUNITIVE DAMAGES ARE EXPRESSLY BARRED

The Debtors here have asserted that the City's conduct in requesting adequate protection before releasing their vehicles is so egregious that it warrants punitive damages of "FIVE MILLION DOLLARS." *See* Complaint, p. 10. But punitive damages are not allowed against a governmental unit. Congress has expressly forbidden the court from issuing a judgment of punitive damages against any governmental unit for a stay violation. Section 106(a)(3) provides, with respect to any action brought under one of the provisions listed in § 106(a) (including § 362), that "[t]he court may issue against a governmental unit an order, process, or judgment under such sections of the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, ***but not including an award of punitive damages***." 11 U.S.C. § 106(a)(3) (emphasis added). In turn, section 101(27) defines governmental unit to include any municipality. *See* 11 U.S.C. § 101(27). The purpose of this express prohibition is easy to understand:

> This limitation on recovery is similar to the limitation on the waiver of the federal government's sovereign immunity in the Federal Tort Claims Act and ***is consistent with traditional rules prohibiting the recovery of punitive damages from municipalities*** that are otherwise subject to suit. As the Supreme Court has explained with respect to municipalities, but with reasoning which is equally applicable to other governmental units, "an award of punitive damages … 'punishes' only the taxpayers, who took no part in the commission of the tort … [and is] in effect a windfall to a fully compensated plaintiff… . Neither reason nor justice suggests that such retribution should be visited upon the shoulders of blameless or unknowing taxpayers."

S. Elizabeth Gibson, *Congressional Response to Hoffman and Nordic Village: Amended Section 106 and Sovereign Immunity*, 69 Am. Bankr. L.J. 311, 331-32 (1995) (emphasis added).

3

The courts agree that the language of § 106(a)(3) is clear and unequivocally bars punitive damages against a governmental unit for a stay violation. *See In re Flynn,* 185 B.R. 89, 93 (S.D. Ga. 1995); *In re Griffin*, 415 B.R. 64, 71 (Bankr. N.D.N.Y. 2009); *In re Davis*, 201 B.R. 835, 837-38 (Bankr. S.D. Ala. 1996); *In re Duby*, 451 B.R. 664, 678 (B.A.P. 1st Cir. 2011). This prohibition extends to counties, *see Rosas v. Monroe Cty. Tax Claim Bureau*, 323 B.R. 893, 902 (Bankr. M.D. Pa. 2004), and even cities that mistakenly enforce parking and traffic laws in violations of the stay, *see In re Odom,* 571 B.R. 687, 698 (Bankr. E.D. Pa. 2017); *In re Quiles Aviles*, 532 B.R. 428, 440 (Bankr. D.P.R. 2015).

The Debtors, therefore, cannot be granted the millions they seek. That is expressly prohibited.[3] Count II should be dismissed with prejudice.

## BOTH COUNTS SHOULD BE DISMISSED BECAUSE THERE WAS NO STAY VIOLATION

### 1. Section 362(b)(3) allows the City to retain possession without violating the stay.

No part of § 362(a) nor the circuit court's interpretation in *Thompson v. Gen. Motors Acceptance Corp., LLC*, 566 F.3d 699 (7th Cir. 2009) requires the City to release a debtor's vehicle immediately upon the filing of a case. *Thompson* was an appeal of the bankruptcy court's denial of a debtor's motion for sanctions against a creditor for violating the automatic stay under 11 U.S.C. § 362(a)(3). *See Thompson*, 566 F.3d at 701. There, the creditor had repossessed a vehicle prepetition to enforce its non-possessory lien. The Court held that the stay required the return of the vehicle

---

[3] Even with respect to actual damages the City is granted additional protection under § 106(c), which requires that any damages be offset against the City's claims against the Debtors before it has to pay any amounts out of pocket. *See United States v. McPeck*, 910 F.2d 509, 513 (8th Cir. 1990). Because each of these debtors owed substantial ticket debt the likelihood of any funds transferring from the City to the debtors or their estates is minimal even if some violation is determined to have occurred.

and remanded for a determination as to whether the violation was willful under § 362(k). *See id.*

Here, § 362(b)(3) applies as an exception of the stay because the City has a possessory lien, as opposed to a lien on title that would be "unaffected by the return of the vehicle." *In re Kuzniewski*, 508 B.R. 678, 692 (Bankr. N.D. Ill. 2014). The exception under § 362(b)(3) provides that a creditor with an "interest in property" may take "any act" to "maintain or continue" the perfection of that interest, if "generally applicable law" makes that perfection "effective against an entity that acquires rights … before … action is taken." *See* 11 U.S.C. §§ 362(b)(3); 546(b)(1)(B). Therefore, the exception applies when:

1. The creditor has a prepetition interest in property;
2. The creditor's post-petition act continues perfection of that interest in property; and
3. Generally applicable law provides that perfection is effective against an entity that acquires rights in the property prior to the act taken to continue perfection.

Here, all requirements are satisfied.

## 1.1.  The City has a pre-petition interest in the Debtor's property.

In order for § 362(b)(3) to apply, the City must first have a pre-petition interest in the Debtor's property, that is, the vehicle. While the term "interest in property" is not defined in the Bankruptcy Code, a possessory interest is an interest in property, as is a lien. *See* 11 U.S.C. § 101(37). The City has a possessory lien.

The Municipal Code of Chicago unambiguously provides that "[a]ny vehicle impounded by the City or its designee shall be subject to a possessory lien in favor of the City in the amount required to obtain release of the vehicle." Municipal Code §§ 9-92-080(f) (emphasis added); *see also,* 2-14-132(l) (for vehicles impounded for other reasons). These ordinances became effective in 2017, but, contrary to how they have sometimes been portrayed, they were not enacted to give the City new rights

5

against bankrupt parties. Actually, they do not represent any change in applicable law; they merely placed a label on the substantive rights the City has had for decades. A possessory lien is the right of a "creditor to keep possession of the encumbered property until the debt is satisfied." *See* Possessory Lien, Black's Law Dictionary (10th ed. 2014). And the City has had the right to retain possession of impounded vehicles until a debt to the City is paid since at least 1958.

Under the Municipal Code, the City is required by its law to retain an impounded vehicle until the owner or other authorized person pays the:

> applicable immobilization, towing and storage fees, and all amounts, including any fines, penalties, administrative fees provided for in Section 9-100-101, and related collection costs and attorney's fees pursuant to Section 1-19-020 or Section 1-19-030, remaining due on each final determination for liability issued to the owner.

Municipal Code § 9-100-120(d); *see also,* § 2-14-132(c)(1)(A) (vehicles impounded for other violations).

This provision provides the City with what is the very definition of a possessory lien. And, as the bankruptcy court in *In re Avila* correctly held, a lien is possessory if "[p]ossession is the only mechanism available to ensure satisfaction of the lien. It is this fact that makes the lien a possessory lien, not the label or lack thereof." *In re Avila*, 566 B.R. at 561 (emphasis added); *see also*, *Kennedy*, 2018 WL 2087453, at *2. Therefore, the City's possessory lien rights are not new, and even predate the Bankruptcy Code itself. The first element of § 362(b)(3) is satisfied.

## 1.2.  Maintaining possession certainly falls within the meaning of "any act" that continues perfection of its possessory lien.

Section 362(b)(3) then allows "any act" to maintain perfection of the City's prepetition lien. Generally, perfection is the "[v]alidation of a security interest as against other creditors." Perfection, Black's Law Dictionary (10th ed. 2014). It serves the purpose of giving third parties notice of the lien. The two classic ways to perfect a

security interest are by filing "a statement with some public office *or by taking possession*." *Id.* (emphasis added). Because the City's lien is a possessory lien perfection is accomplished by the latter instead of the former. *In re Avila,* 566 B.R. at 560, *citing In re Hayden,* 308 B.R. 428, 432-33 (B.A.P. 9th Cir. 2004). The Municipal Code here expressly provides that the vehicle shall continue to be impounded until payment of all fines, penalties, and fees. Municipal Code § 9-100-120(d). And only after payment of all these amounts will the vehicle be released to the owner or other authorized person. *Id.* Thus, anyone (including the owner or otherwise) that is legally entitled to possession must pay the City's lien first. Possession maintains priority and puts the world on notice of the City's interest.

There is one exception to the general rule requiring that the City's lien in the amount of fines and penalties be satisfied prior to release. Preexisting lienholders already on title at the time of the impoundment may obtain possession by satisfying the City's lien only with respect to the applicable towing and storage fees (if other requirements are met). *See* Municipal Code § 9-92-080(c). (The Municipal Code creates a super-priority possessory lien with respect to towing and storage fees because even earlier-in-time lienholders must pay those amounts to obtain release of an impounded vehicle.) Anyone else, however, must satisfy the entire amount of the possessory lien to obtain release. This creates a first-in-time/first-in-right priority lien for fines and penalties.

Retaining possession of the vehicle clearly fits within "any act" to maintain the City's possessory lien perfection.

## 1.3.  The City's generally applicable law provides that continued possession is effective to maintain the City's priority over intervening creditors.

The third requirement is that generally applicable law must provide that perfection is effective against an entity that acquires rights in the property prior to the act

taken to maintain perfection. This requirement can be subdivided into two parts: (1) whether the law is generally applicable, and (2) whether perfection is then effective against an entity that acquires rights before the perfecting act, *i.e.*, whether perfection continues unbroken relating back to the original perfection date. Here, both are met.

The term "generally applicable law" is not expressly defined in the Bankruptcy Code, but the legislative history clearly provides a meaning. "The phrase 'generally applicable law' relates to those provisions of applicable law that apply both in bankruptcy cases and outside of bankruptcy cases." H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 371-72 (1977). This means that states and local governments are free to define property rights and perfection of those rights, as long as they apply the same way inside of a bankruptcy as they would outside of bankruptcy. In short, a state or local government cannot create liens that snap into effect only when a bankruptcy petition is filed. *See* H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 371-72 (1977) (The section "is not designed to give States an opportunity to enact … liens that apply only in bankruptcy cases."); *see also, In re Avila,* 566 B.R. at 560, n.3; *Kennedy*, 2018 WL 2087453, at *2.

Here, the City's possessory lien in the vehicles it impounds applies both inside and outside of bankruptcy. In fact, the vast majority of the time, the City's possessory lien is applied outside of the bankruptcy context. In other words, even when an individual does not file for bankruptcy, he still has to pay his debt to the City before the City is required (or even allowed) to release the vehicle. If the owner does not pay, the City must retain possession. As the *Avila* court correctly held, "on its face, the statute is not specifically targeted at bankruptcy cases. Rather, it applies to all impounded vehicles without regard to whether the owner of the vehicle is a debtor in bankruptcy." *In re Avila,* 566 B.R. at 560. The law is generally applicable.

Next, "if state law provides that a creditor's security interest is superior to the

rights of any entity obtaining its interest in property prior to the date the creditor takes action to maintain or continue perfection of its lien," the exception applies. *In re Hayden,* 308 B.R. at 432. This means the exception applies to any act to continue the perfection of a lien that relates back to an earlier date of original perfection, or where the act of perfection trumps all prior liens and is thus super-priority. *See In re AR Accessories Grp., Inc.,* 345 F.3d 454, 458 (7th Cir. 2003). Here, the act of continued possession both relates perfection back to the prepetition impound date, and also continues perfection of the City's super-priority lien for towing and storage fees.

In the case of a possessory lien, the continuing possession continues perfection. *See In re Avila*, 566 B.R. at 560-61. Continuing possession is by its nature an act that is occurring again and again at every moment in time moving forward.[4] *See, e.g., Williams v. S. Pac. R. Co.*, 89 P. 599, 599 (Cal. 1907) (continuing trespass to property is a new act at each moment); *City of Evanston v. Texaco, Inc.*, 19 F. Supp. 3d 817, 827 (N.D. Ill. 2014) (under Illinois law a continuing nuisance or trespass is a new act each moment); *Carey v. Kerr-McGee Chem. Corp.*, 999 F. Supp. 1109, 1117 (N.D. Ill. 1998) (same). And for the exception to apply, the act to continue perfection must make perfection effective against a lien acquired prior to that act. That act of perfection here is the most recent moment in time when the City held possession. Thus, when a possessory lien is involved, the question simply becomes whether the possessory lien has priority over another interest acquired while the property is in the possessory lienholder's possession. And the answer here is that it does.

Anyone that wants possession of the vehicle, other than a lienholder that had an interest prior to impoundment, must satisfy the City's entire lien first. Therefore,

---

[4] This is in contrast to a lien that is perfected by filing. Filing is one act that occurs at one time to continue perfection into the future for some set period. Here, if at any point the City stops continuously acting to maintain possession then its lien and its perfection ceases.

the City's act of maintaining possession ensures that the lien is effective against entities that acquire rights prior to the City's last act to maintain perfection, *i.e.*, the most recent moment of possession. *See In re Avila,* 566 B.R. at 563 ("the City's continued possession of the Vehicle is necessary to maintain or continue perfection of its statutory lien under § 546(b)."). This element is satisfied.

This requirement is also satisfied because the City's lien with respect to all towing and storage fees trumps all prior liens, *i.e.*, the lien is super-priority. *See In re AR Accessories Grp., Inc.,* 345 F.3d at 458. Therefore, the exception applies to allow the City to maintain possession of impounded vehicles because of the super-priority lien for towing and storage costs. *See In re Avila,* 566 B.R. at 561.

### 1.4.   *Thompson* did not apply § 362(b)(3).

The Seventh Circuit decision in *Thompson* is not contrary to this application of § 362(b)(3) regarding possessory liens. As the Court held in *Avila*:

> Importantly, the *Thompson* court did not have occasion to examine whether the exception to the automatic stay found in § 362(b)(3) applies to a creditor whose lien rights arise solely from its possession of the debtor's property. Courts tackling this issue, which most often arises in the context of repossessed vehicles, have consistently reached the same result: when the creditor's continued possession of the property is necessary to maintain or continue that creditor's perfection of its statutory lien under § 546(b), the creditor is protected by the provisions of § 362(b)(3).

566 B.R. at 562.

A litany of other cases on the issue of whether possessory liens fall within the exception of § 362(b)(3) come to the same conclusion as *Avila. See, e.g., In re Ingram,* 508 B.R. 98, 102 (Bankr. E.D. Wis. 2014); *In re Boggan,* 251 B.R. 95 (B.A.P. 9th Cir. 2000); *In re Hayden,* 308 B.R. at 434; *In re Eaton,* 220 B.R. 629, 631 (Bankr. E.D. Ark. 1998); *In re Vega,* 503 B.R. 38, 42 (Bankr. E.D. Mich. 2013); *see also, In re Kaufman,* 315 B.R. 858, 863 (Bankr. N.D. Cal. 2004); *In re Clark,* 2009 WL 2849785

(Bankr. D.D.C. Sept. 1, 2009) at *2.  The exception applies.

## 2. The City may retain possession of the Debtor's vehicle as a police power under 11 U.S.C. § 362(b)(4).

The City also has a police power exception to the automatic stay under § 362(b)(4). The City may maintain possession of the vehicle because it was impounded to enforce its traffic and parking related laws. Under § 362(b)(4) the "automatic stay does not apply to actions by governmental units to enforce police and regulatory powers, or to the enforcement of judgments obtained in an action or proceeding by the governmental unit to enforce those powers." *Ginsberg & Martin on Bankruptcy*, § 3.02[D]. Under this section, the stay will not protect those that file a petition "for the purpose of evading [governmental] efforts to secure compliance with the [the law]." *Parkview Adventist Med. Ctr. v. United States*, 842 F.3d 757, 764 (1st Cir. 2016).

While there are generally two tests applied to determine whether a governmental unit is exercising its police powers, and thereby excepted from the stay, both tests are merely means to ascertain the purpose of the act in question. *In re Hicks*, 582 B.R. 6, 13 (Bankr. N.D. Ill. 2018). Additionally, "[o]nly the *purpose* of the City's actions with regards to immobilization [and impoundment] of vehicles generally is relevant to the analysis of § 362(b)(4), not the underlying *cause* of the immobilization [and impoundment] of Debtor's vehicle." *Id.* at 12 (emphasis added). Thus, while incurring and not paying parking, speeding, and red-light tickets may have been the *cause* of the immobilization and impoundment, the City's *purpose* for immobilizing and impounding the vehicle is one of law enforcement, and thus a police power.

The purpose of the City's immobilization and impoundment program is spelled out in both the Illinois statue authorizing it, and the City ordinance providing for it. Illinois law provides that the City may establish a "program of vehicle immobiliza-

tion [as subsequent impoundment] for the purpose of facilitating enforcement of [parking and traffic related] regulations." 625 ILCS 5/11-208.3(c). The City ordinance likewise established its immobilization and impoundment program "for the purpose of enforcing the parking, standing, compliance, automated traffic law enforcement system, or automated speed enforcement system ordinances of the traffic code." M.C.C. § 9-100-120(a). They are not to collect money.

The courts have supported this purpose. This is because without a next level of deterrence mechanism after fines, the City would be without a means of compelling many individuals to comply with its traffic safety laws and regulations. *See Grant v. City of Chicago*, 594 F. Supp. 1441, 1447 (N.D. Ill. 1984). Booting and impounding vehicles serves as general deterrence, *id.,* and "'general deterrence' is a proper exercise of police and regulatory power under section 362(b)(4)." *In re Emerald Casino, Inc.*, 2003 WL 23147946, at *6 (N.D. Ill. Dec. 24, 2003). Therefore, impounding vehicles and holding them until the fine is internalized, *i.e.*, satisfied by the vehicle owner, serves a substantial City interest in regulating its streets. *See Grant*, 594 F. Supp. at 1447. In some cases, this is the only feasible, means of compelling compliance with the law. *Id*.

The City's "[o]rdinance establishes a regime for the enforcement of the City's parking regulations, under which vehicle owner's interest is gradually eroded, and then ultimately extinguished, after he repeatedly violates the City's regulations and repeatedly fails to pay (or successfully to contest) the penalties associated with those violations." *Robledo v. City of Chicago*, 778 F. Supp. 2d 887, 897 (N.D. Ill. 2011). "However draconian plaintiffs may find the final penalty in the City's legislative regime, they were not entitled to ignore the lesser penalties[.]" *Id*. Such a regime "deters drivers from committing traffic and parking infractions in the first instance[,]" and is "firmly fixed in the punitive and remedial jurisprudence of the country." *Tate v. D.C.*, 627 F.3d 904, 909 (D.C. Cir. 2010). Therefore, the purpose of

12

the City's immobilization and impoundment program is a valid exercise of the City's police power.

The bankruptcy court in *Hicks* agreed that the City could use its police power to impound a vehicle; however, it incorrectly imposed on the City a requirement not found in § 362(b)(4).  The court incorrectly held that the City must first sufficiently justify its use of police powers before the stay exception applies. It held in that the City must request a "hearing regarding the dangerous nature of the Debtor's driving" and show such driving was dangerous enough that the stay exception should apply. However, the Supreme Court was very clear when it held that the bankruptcy court does not have the power to look behind the government's use of police power to decide whether a debtor's actions warranted the use of the police power in the first instance. *See Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 40 (1991); *see also, In re Javens,* 107 F.3d 359, 366 (6th Cir. 1997) ("Congress removed local regulation … from the effect of the automatic stay[.]"). Ultimately, the bankruptcy court does not have the power to conduct "mini-trials" into whether a debtor is a dangerous enough driver or not (under some undefined standard) to warrant the City's impoundment of his car. *See, e.g., In re Spookyworld, Inc.*, 346 F.3d 1, 10 (1st Cir. 2003). The purpose of impounding and holding the vehicle is to enforce the law by acting as a penalty to the individual and as a general deterrent to the population at large. That is all the City has to show to avail itself of the police power exception. Whether a bankruptcy court thinks this is good policy, is not within the court's power under § 362(b)(4) to decide. The stay exception applies.

## BOTH COUNTS MUST BE DISMISSED UNDER DUE PROCESS

### 1. Procedural Due Process analysis.

If neither exception applies then the statutory scheme violates procedural due process and is void. As a general rule, the party deprived of a protected property in-

terest is entitled to prior notice and a hearing before the deprivation occurs. *See Zinermon v. Burch*, 494 U.S. 113, 132 (1990). "The right to prior notice and a hearing is central to the Constitution's command of due process." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993). The Supreme Court said long ago

> The constitutional right to be heard is a basic aspect of the duty of government to follow a fair process of decision making when it acts to deprive a person of his possessions. The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment—to minimize substantively unfair or mistaken deprivations of property[.]

*Fuentes v. Shevin*, 407 U.S. 67, 80-81 (1972).

The law in this circuit after *Thompson* is that § 362(a)(3) automatically transfers the possessory interest from a creditor with lawful possession on the petition date to the debtor immediately when the petition is filed. Therefore, § 362(a)(3) applies to deprive the creditor of a property interest without any determination beforehand that the deprivation is appropriate or fair.

Due process, however, will "tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in '***extraordinary situations*** where some valid governmental interest is at stake that justifies postponing the hearing until after the event.'" *James Daniel Good Real Prop.*, 510 U.S. at 53 (emphasis added). Such extraordinary cases are the exception, not the rule. For example, a prompt post-deprivation hearing may satisfy due process when there is an emergency or when a predeprivation hearing is completely infeasible. *See Penn Cent. Corp. v. U.S. R.R. Vest Corp.*, 955 F.2d 1158, 1161 (7th Cir. 1992); *Zinermon*, 494 U.S. at 132; *see also Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 679 (1974) (predeprivation hearing infeasible where property is of a "sort that could be removed to another jurisdiction, destroyed, or concealed, if advance warning of confiscation were given[.]"). But even when there is a prompt postpedrevation hear-

14

ing, it must be accompanied by sufficient predeprivation procedural safeguards, such as the requirement of a detailed affidavit that the party seeking the deprivation is entitled to the property under the law and that a judge review the request (rather than a clerk, or no one at all because it is automatic) and issue the deprivation order. *See Connecticut v. Doehr,* 501 U.S. 1, 10 (1991).

Because it is difficult to list the circumstances when a postdeprivation hearing would satisfy due process, the Supreme Court provided a three factor analysis in *Mathews v. Eldridge*, 424 U.S. 319 (1976) for "formulating—more accurately perhaps, generating—exceptions to the requirement of predeprivation process." *Penn Cent. Corp.*, 955 F.2d at 1163. The *Mathews* analysis is slightly different, however, when the statute at issue enables one private party to take a property interest from another private party by enlisting the power and force of the government, such as a through prejudgment attachment. *See Doehr,* 501 U.S. at 10.   Under *Thompson*, § 362(a)(3) is analogous to a prejudgment attachment statute.

For cases where government action is used to transfer property rights from one private party to another, the relevant inquiry is: (1) consideration of the property interest that will be affected by the official action, that is, the deprivation; (2) the risk of an erroneous deprivation through procedures used, and the probable value of additional procedural safeguards; and (3) the interest of the private party seeking the deprivation and transfer of rights to himself, with due regard for any ancillary government interest in the procedures used and burden of additional safeguards. *Doehr*, 501 U.S. at 11. In such cases, the process must also be closely scrutinized because the purpose of the constitutional protection is "to minimize substantively unfair or mistaken deprivations of property, a danger that is especially great when the [government] seizes [property] simply upon the application of and for the benefit of a private party." *Fuentes*, 407 U.S. at 80–81.

## 1.1. The creditor or possessory lienholder's interest affected by the deprivation.

The first inquiry is to consider the interest of the party that has its property interest deprived. There can be little doubt that a creditor's possessory interest in property is an interest protected by constitutional due process. The Supreme Court has held on many occasions that a possessory interest in personal property is protected by both the Fifth and Fourteenth Amendments, even if the deprivation of possession is temporary or nonfinal. *See Doehr,* 501 U.S. at 12 ("temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection."); *Fuentes*, 407 U.S. at 84; *see also, Penn Cent. Corp.*, 955 F.2d at 1162; *Saukstelis v. City of Chicago*, 932 F.2d 1171, 1172 (7th Cir. 1991). Therefore, due process is required when the federal judiciary is enlisted to strip away the valid possessory interest of one party in order to hand it over to another. It is circuit law under *Thompson* that this is exactly what the Bankruptcy Code does immediately, and with no judicial involvement, when a chapter 13 petition is filed.

Additionally, the City's property interest is even more substantial. The City's interest in the vehicle at issue is a possessory lien, of which possession is the essence. *See* Restatement (First) of Security § 80 ("where a possessory lienor surrenders possession of a chattel to a bailor, the lien is terminated"); *see also,  The Kalorama,* 77 U.S. 204, 210 (1869); *Nat'l Bank of Joliet v. Bergeron Cadillac, Inc.*, 347 N.E.2d 874, 875 (Ill. App. 4th Dist. 1976), *aff'd,* 361 N.E.2d 1116 (Ill. 1977); *Upgrade Corp. v. Michigan Carton Co.*, 410 N.E.2d 159, 161 (Ill. App. 1st Dist. 1980); *Twin Sewer & Water, Inc. v. Midwest Bank & Trust Co.*, 720 N.E.2d 636, 639-40 (Ill. App. 1st Dist. 1999); *In re Boggan*, 251 B.R. 95, 100 (B.A.P. 9th Cir. 2000).  The instant the City is deprived of possession it loses its lien and perfection of that lien. And even if as a matter of law some of the City's lien rights in the property are maintained after

16

possession is lost, nothing stops a debtor from transferring, destroying, or further encumbering the vehicle once the vehicle is out of the City's possession. There is also little to nothing that could stop the debtor from simply abandoning the bankruptcy case once he has possession, causing the City to have its possessory lien immediately and finally terminated. In fact, that is exactly what has happened in countless cases, including cases involving schemes to file fraudulent petitions to obtain impounded vehicles. *E.g.*, Plea Agreements, *United States v. Rankins, et al*, 17-cr-00778 (N.D. Ill. 2018) (Nos. 51, 53) (defendants filed at least 39 fraudulent petitions presented to the City to secure release of impounded vehicles).

This lack of process also does not just affect the City. It strips any creditor that has a state law possessory lien on the petition date, whether common law or statutory.[5] And it strips that interest with absolutely none of the safeguards that have been held to save other statutes that fail to provide a predeprivation hearing. *See Doehr*, 501 U.S. at 10 (some of those safeguards are "the requirement that a judge rather than a clerk determine that there is a clear showing of entitlement [before deprivation occurs, and] the necessity for a detailed affidavit.").

To enlist the aid of the federal judiciary in depriving a creditor of its possessory lien interest (and to obtain what is in essence an order of mandatory injunction requiring the creditor to relinquish its possessory interest immediately) the debtor merely needs to file a naked bankruptcy petition with the clerk. No judicial discretion or action is involved to determine whether the requirements for turnover under § 542(a) have been met (*i.e.*, that the property may be used under § 363, adequate protection is provided, and it is not of inconsequential value of benefit to the estate),

---

[5] *See, e.g.*, 770 ILCS 40/48 (innkeeper's lien); 770 ILCS 40/49 (stable keeper's lien); 770 ILCS 40/50 (agister's lien); 770 ILCS 40/50a (threshermen's lien); 770 ILCS 45/1 (labor and storage lien); 770 ILCS 90/1 (warehousemen's lien); 770 ILCS 95/1 (storage lien); 770 ILCS 105/1 (tool and die lien); 810 ILCS 5/2-711(3) (rejected goods lien); 810 ILCS 5/2A-508(5) (lessee's lien).

nor is a bond or any other type of protection provided for instances of mistaken deprivation, destruction, or wholesale dissipation of the property after the debtor has possession. Not even so much as an affidavit or declaration that the debtor has an interest at all in the vehicle is required because the debtor has at least 14 days after the petition date to file any schedules. *See* Fed. R. Bankr. P 1007(c). No prejudgment attachment statute in the country disregards due process to such an extent as to transfer possession of property merely by filing a case with the clerk (with no judicial involvement or any other safeguards against substantial abuse of the system whatsoever).

The City's property interest in the vehicle is also rooted in law enforcement. The City "has a strong interest in enforcing traffic ordinances for the safety and convenience of the public. The enforcement is impossible if vehicle owners can repeatedly ignore with impunity the sanctions imposed for violation of the ordinances." *Grant*, 594 F. Supp. at 1447; *see also, In re Hicks*, 582 B.R. at 6. The City's boot and impound program "provides an effective, and possibly the only feasible, means of forcing repeat violators to pay for or contest the tickets they have received." *Grant*, 594 F. Supp. at 1447. Providing individuals with a means of terminating the City's possessory lien interests and retrieving their vehicles without any process to the City substantially impairs the City's ability to enforce its traffic laws. Further, a vehicle is property "of a sort that could be removed to another jurisdiction, destroyed, or concealed" if possession is mistakenly given to the debtor when the requirement of § 542(a) cannot be met and adequate protection not provided. *See Calero-Toledo*, 416 U.S. at 679 (1974). Therefore, the harm to the City would likely be irreparable once deprived of its possession and lien.

Ultimately, the City has a significant property interest in the vehicle, both because it has a possessory lien that by definition relies on actual possession to continue to exist, and because the City's property interest is not merely financial, but is

18

a governmental interest used to enforce the law.

## 1.2.  The risk of erroneous deprivation is enormous and value of a predeprivation hearing is overwhelming.

The second factor is the risk that there will be an erroneous deprivation of property rights, and whether there is value in additional procedural safeguards. Under the § 542(a) of the Bankruptcy Code, the debtor is only entitled to turnover of property that he may use under § 363 and that which is not of inconsequential value and benefit to the estate. *See* 11 U.S.C. § 542(a). Under § 363(e) a creditor is entitled to adequate protection of their property interests that the debtor proposes to use, or the debtor should not be allowed to use it at all. *See* 11 U.S.C. § 363(e); *see also, United States v. Whiting Pools, Inc.*, 462 U.S. 198, 211-12 (1983) (secured creditor "under § 363(e), remains entitled to adequate protection for its interests"). The means of adequately protecting a possessory lienholder may be tricky, but that does not mean that adequate protection does not need to be given. *See Kennedy*, 2018 WL 2087453, at *4.

Adequate protection requires that the possessory lien be replaced with something of the indubitable equivalence (*i.e.*, something which does not put the City in a worse position). The debtor in these cases did not offer anything of the sort. They essentially admit that they want to strip off the City's possession and lien rights and not provide anything in return. Thus, they seek to use the lack of process to strip off the City's interest not as a preliminary matter, but as a final result. They do not try to meet the requirements of the Bankruptcy Code under § 542(a) to strip off that interest (*i.e.*, providing adequate protection). And this is the result that *Thompson* held federal law provides for under §§ 362(a). Thus, in any case where adequate protection would be required there will be an erroneous deprivation. Thus, under this version of the law, erroneous deprivation is the rule, not the exception.

There is, therefore, significant value in requiring a predeprivation hearing. In

fact, in other circuits the law is different and a debtor has to bring suit against the creditor under § 542(a) to obtain a turnover order. *See In re Cowen*, 849 F.3d 943, 951 (10th Cir. 2017); *United States v. Inslaw, Inc.*, 932 F.2d 1467, 1474 (D.C. Cir. 1991). Before the turnover order is granted, the creditor may present defenses, such as lack of adequate protection or that the property has no value or benefit to the estate. This fixes the problem presented by this case, and the thousands of others, where the debtor doesn't even attempt to satisfy the requirements for turnover under § 542(a) before demanding turnover. And the fact that other circuits require a predeprivation hearing and process shows that it is completely feasible. Requiring a predeprivation hearing would remedy the substantial fraud that has occurred in using the bankruptcy courts to obtain vehicles without any intent to prosecute a bankruptcy case.

The process in this circuit does facially allow for a postdeprivation hearing, by granting the creditor the ability to seek to modify the stay on an emergency basis, but in reality that is not much of an option at all. For the creditor to take advantage of such a hearing it has to choose between two untenable options. First, the creditor could hold on to the property until a hearing can be held on the motion to modify the stay. However, taking that option means knowingly violating the law for every second before the hearing is held. And if the creditor loses, then it is not just a matter of losing the determination as to whether the deprivation was correct, but opens the creditor up to stay violation damages. It can hardly be said that a postdeprivation hearing is provided when one has to knowingly break the law to take advantage of it. *See* Ralph Brubaker, "Turnover, Adequate Protection and the Automatic Stay (Part II): Who Is 'Exercising Control' Over What?" 33 No. 9 Bankruptcy Law Letter NL 1 (2013), at 5 ("any such emergency hearing 'would come only after a period during which the creditor is in contempt.'").

The other option is to surrender the property and then seek adequate protection.

But at that point the property is gone (sometime never to be found again) and if one has a possessory lien, like the City does here, that lien and perfection of that lien are also gone. *See In re WEB2B Payment Solutions, Inc.,* 488 B.R. 387 (B.A.P. 8th Cir. 2013). Therefore, while the debtor may assert there are adequate postdeprivation procedures, that is not true. Not by a long shot.[6]

Ultimately, the government here could very easily and feasibly provide a pre-deprivation hearing, which is what other circuit have held the text of the Bankruptcy Code already requires, and the fact that there may be a postdeprivation remedy, which there really isn't, does not matter. *See Zinermon*, 494 U.S. at 132 (1990) ("In situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking."). As the Supreme Court aptly observed with respect to denying a predeprivation hearing: "This Court has not . . . embraced the general proposition that a wrong may be done if it can be undone." *Fuentes*, 407 U.S. at 81–82.

### 1.3.   The interests of the debtor and the government in immediately stripping the creditor of its property interest without process are minimal.

The third consideration is the debtor's interest in the deprivation as well as those of the federal government in providing automatic *ex parte* deprivations immediately upon the mere filing of a piece of paper with the bankruptcy clerk. Under this factor, there must be "exigent circumstance permitting postponing any notice or hearing until after the [deprivation] is effected." *Doehr*, 501 U.S. at 16. General statements of the benefit will not suffice.

---

[6] It must also be noted that this procedure imposes the burden on the creditor or possessory lienholder to initiate the postdeprivation proceeding, and the filing of a motion to modify the stay costs it $181. Thus, the creditor has to pay to have its rights restored even though they should have never been taken in the first place.

There is an argument that many debtors depend on their vehicles to get to and from places. And if the City, another secured creditor, or even a mechanic that worked on the vehicle but has not been paid, is allowed to maintain possession of that vehicle—even to maintain its valid lien—the debtor's ability to get around will be impaired. But that is a far cry from exigent circumstance sufficient to deny those parties any process before the deprivation of their possession interest occurs. Nearly every American could make that claim of need for a vehicle, and that cannot be the standard for depriving due process.

The procedure to obtain turnover in other circuits provides for the debtor to initiate an action against the creditor and the creditor to defend itself. If the debtor would like to speed up this process he may certain initiate a § 542 action as soon as the petition is filed and then seek an expedited hearing.

The need of the government here is also minimal. As a rule, the need of the government cannot be greater than that of the debtors. *See Doehr*, 501 U.S. at 16. And any additional burden on the government in providing a predprivation hearing would be negligible because under *Thompson* it already provides the option for a postderpivation hearing, although not a realistic one. *See id.* Shifting the hearing from after the fact to before the fact is not a burden on the government. *See id.*

Certainly debtors want their vehicles back as soon as possible, but that general benefit does not create an extraordinary case or constitute the exigent circumstances required to deny the creditors and possessory lien holders of process before their interests are deprived.

## 2. Due process requires a prejudgment hearing.

"When applying the Bankruptcy Code or its Rules strictly would deny a claimant due process rights in violation of the Fifth Amendment, then the Constitution must take precedence and the Code or its rules must be set aside or modified in their ap-

plication." *In re Marino*, 195 B.R. 886, 891 (Bankr. N.D. Ill. 1996). Because due process requires a prejudgment hearing, § 362(a)(3) cannot be applied to automatically strip the City of its possessory lien interest immediately upon the filing of the petition. The Debtor's motion should be denied. He needs to file and properly serve an adversary under § 542(a) providing the City with proper notice and an opportunity to be heard prior to the issuance of any turnover order. *See Matter of Perkins*, 902 F.2d at 1258.

## CONCLUSION

The Debtor's complaint should be dismissed with prejudice in its entirety. Punitive damages may not be levied against the City and the City has two stay exceptions that are applicable and allow it to retain possession of the vehicle without violating the stay. Additionally, if this court holds neither exception applies, then the Bankruptcy Code denies that City due process before depriving it of its possessory interest and lien in violation of the Fifth Amendment.

Respectfully submitted,

Edward N. Siskel
Corporation Counsel

By: s/ David Paul Holtkamp
David Paul Holtkamp
Asst. Corp. Counsel Supervisor
**CITY OF CHICAGO,**
**DEPARTMENT OF LAW**
Chicago City Hall
121 N LaSalle St., Ste. 400
Chicago, IL 60602
312.744.6967
David.Holtkamp2@cityofchicago.org