# In the
# United States Bankruptcy Court
## For the Northern District of Illinois

| | |
|---|---|
| IN RE:<br><br>**EMELIDA CORDOVA**,<br><br>DEBTOR. | TO BE HEARD BY THE<br>**U.S. DISTRICT COURT**<br><br>HON.<br>U.S. DISTRICT JUDGE<br><br>CASE NO. |
| **EMELIDA CORDOVA**, *ET AL.*,<br><br>PLAINTIFFS,<br><br>V.<br><br>**CITY OF CHICAGO**, AN ILLINOIS MUNICIPAL CORPORATION,<br><br>DEFENDANT. | BK. CASE NO. 19-BK-6255<br>ADV. CASE NO. 19-AP-684<br><br><br>HEARING DATE:<br>HEARING TIME: |

# MOTION FOR WITHDRAWAL OF THE REFERENCE UNDER 28 U.S.C. § 157(d)

| | |
|---|---|
| **Mark Flessner**<br>Corporation Counsel | David Paul Holtkamp (6298815)<br>Assistant Corporation Counsel Supervisor<br>**CITY OF CHICAGO, DEPARTMENT OF LAW**<br>Chicago City Hall<br>121 N LaSalle St., Ste. 400<br>Chicago, IL 60602<br>Tel: (312) 744-6967<br>David.Holtkamp2@cityofchicago.org |

# INTRODUCTION

There are now 32 plaintiffs in the above captioned adversary proceeding pending in the bankruptcy court seeking $5 million in damages, including punitive damages, against the City. *See* Fourth Amended Complaint, attached as **Exhibit A**. Of those plaintiffs, seven were ineligible to file the bankruptcy case in which they allege the City violated the automatic stay, another one was barred from filing the bankruptcy by order in a prior case, and a total of 29 out of the 32 have been dismissed (usually a month or two into the case).[1] All these individuals, however, have joined a two count complaint that alleges that the City refused to immediately release their previously impounded vehicles after each plaintiff filed for bankruptcy. *See id.* They assert that this was a violation of the automatic stay under 11 U.S.C. § 362(a) and they seek damages under 11 U.S.C. § 362(k) (actual damages in count I, and punitive damages in count II). *See id.*

The City filed a motion to dismiss the complaint under Rule 12(b)(6), which is currently pending. *See* Motion to Dismiss, attached as **Exhibit B**. The City seeks to dismiss both counts of the complaint because the automatic stay, as applied here, violates the City's due process rights under the Fifth Amendment and therefore is unenforceable. *See id.* The City also asks to dismiss count II, seeking punitive damages, under the City's federal common-law immunity protecting it against punitive damages. *See id.* The City certified its constitutional challenge under Federal Rule of Civil Procedure 5.1, and the United States has intervened. *See* Motion to Inter-

---

[1] This court may take judicial notice of the bankruptcy court dockets in these cases showing the dismissals, and for the purposes of the City's motion to dismiss the Court may properly consider those dockets without converting the motion to a summary judgment motion. *See In re Salem*, 465 F.3d 767, 771 (7th Cir. 2006); *see also, Barrow v. City of Chicago*, 2014 WL 1612712, at *3, n. 2 (N.D. Ill. Apr. 21, 2014); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); Charles Wright & Arthur Miller, 5C Fed. Prac. & Proc. Civ. § 1366 (3d ed.).

vene, attached as **Exhibit C**. The primary issues are now significant and first impression questions of non-bankruptcy federal law, *i.e.,* the due process clause of the Fifth Amendment, and federal common-law immunity. Mandatory withdrawal under 28 U.S.C. § 157(d) applies. This motion should be granted.

# DISCUSSION

## 1. District Court Jurisdiction.

The district court has "exclusive and original jurisdiction of all cases under title 11" (*i.e.*, the Bankruptcy Code). 28 U.S.C. § 1334(a). In addition, "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." *Id.* § 1334(b). For cases filed in this district, the United States District Court for the Northern District of Illinois has subject matter jurisdiction over all matters (a) arising under title 11 (such as the bankruptcy case itself), (b) arising in a bankruptcy case (such as an adversary proceeding seeking to avoid pre-bankruptcy transfers under 11 U.S.C. §§ 544 and 548), or (c) related to a bankruptcy case (that is, a proceeding that "affects the amount of property available for distribution or the allocation of property among creditors," *In re Xonics, Inc.,* 813 F.2d 127, 131 (7th Cir. 1987)).

A district court may refer "any and all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 … to the bankruptcy judges for the district." 28 U.S.C. § 157(a). Pursuant to that reference, this adversary proceeding was initiated in the bankruptcy court.

## 2. Withdrawal of the Reference by the District Court.

Under 28 U.S.C. § 157(d), the reference to the bankruptcy court may, or must, be withdrawn under certain circumstances. This section makes clear that there are two types of withdrawal. First, there is mandatory withdrawal. Under mandatory

withdrawal the district court "shall" "withdraw…if the court determines that resolution …requires consideration of both [the Bankruptcy Code] and other laws of the United States…" 28 U.S.C. § 157(d). Second, there is permissive withdrawal. Under permissive withdrawal, the district court "may" "for cause shown" withdraw the reference. Both apply here.

### 3. Mandatory Withdrawal Applies.

Under 28 U.S.C. § 157(d), mandatory withdrawal applies when the case involves "the interpretation, as opposed to mere application, of the non-title 11 [federal law]." *Matter of Vicars Ins. Agency, Inc.*, 96 F.3d 949, 954 (7th Cir. 1996). "The legal questions involved need not be of 'cosmic proportions,' but must involve more than mere application of existing law to new facts." *Vicars*, 96 F.3d at 954, *see also*, *In re Ames Dep't Stores Inc.*, 512 B.R. 736, 743 (S.D.N.Y. 2014) (the matter requires "more than a simple application of well-settled law to the facts of this case"); *Matter of Lissner Corp.*, 115 B.R. 604, 612 (N.D. Ill. 1990) (Rovner, J.) (deciding the issue "will require more than rote application" of the law to the facts). "Section 157(d) is meant to assure that an Article III judge decides issues calling for more than routine application of federal laws outside the Bankruptcy Code." *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 307, 312 (S.D.N.Y. 2011) (internal citation omitted).

The purpose of referring bankruptcy cases to bankruptcy courts is to place those cases with bankruptcy judges that have exceptional expertise in the area. However, that purpose falls aside when the matter calls for the interpretation of non-bankruptcy law. Therefore, the purpose of mandatory withdrawal is to take back those matters where there is a significant issue, or issues, of non-bankruptcy law so that an Article III court may decide those. Here, the text and the purpose of mandatory withdrawal are clearly met.

The primary issues here are certainly significant and first impression questions of non-bankruptcy law. While the complaint seeks damages under the Bankruptcy Code, the City's motion to dismiss both counts, along with the United States' response to that motion, requires an in-depth analysis of the due process clause of the Fifth Amendment to the U.S. Constitution.[2] Additionally, the City seeks to dismiss count II, which seeks punitive damages. This will require an in-depth analysis of the common-law immunity municipalities enjoy against such damages.

### 3.1. The Significant Due Process Issue.

In summary, the problem here is that in this circuit, § 362(a) of the Bankruptcy Code operates to automatically and immediately transfer possession of property in the lawful possession of another on the petition date to the debtor merely by filing a single page bankruptcy petition with the clerk's office. *See Thompson v. General Motors Acceptance Corp. LLC*, 566 F.3d 699 (7th Cir. 2009); *In re Fulton,* 926 F.3d 916 (7th Cir. 2019). Therefore, § 362(a) applies to deprive people and entities, and the City here, of a protected property interest (its possessory interest) without any prior notice or hearing to determine whether that deprivation is appropriate or fair, and does so on the pain of sanctions. Under the three factor test from *Mathews v. Eldridge*, 424 U.S. 319 (1976), this scheme violates the City's due process rights under the Fifth Amendment.

As a general rule, a party deprived of a protected property interest is entitled to prior notice and a hearing before a deprivation occurs. *See Zinermon v. Burch*, 494

---

[2] The U.S. does not contest that the City is a "person" protected by the Fifth Amendment. *See* Memo of Law, n. 2, p. 5, attached as <u>Exhibit C</u>. There isn't much to argue on that score in any event. Generally "municipal corporations, like private ones, should be treated as natural persons for virtually all purposes of constitutional and statutory analysis." *Cook County, Ill. v. U.S. ex rel. Chandler*, 538 U.S. 119, 120 (2003); *see also, Creek v. Vill. of Westhaven*, 80 F.3d 186, 193 (7th Cir. 1996); *Fogel v. Zell*, 221 F.3d 955, 962 (7th Cir. 2000).

U.S. 113, 132 (1990). "The right to prior notice and a hearing is central to the Constitution's command of due process." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993). The Supreme Court said long ago

> The constitutional right to be heard is a basic aspect of the duty of government to follow a fair process of decision making when it acts to deprive a person of his possessions. The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment—to minimize substantively unfair or mistaken deprivations of property[.]

*Fuentes v. Shevin*, 407 U.S. 67, 80-81 (1972). To be sure, the Constitution will "tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in '*extraordinary situations* where some valid governmental interest is at stake that justifies postponing the hearing until after the event.'" *James Daniel Good Real Prop.*, 510 U.S. at 53 (emphasis added); *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 563, n. 12 (1983) ("*The general rule, of course*, is that absent an 'extraordinary situation' a party cannot invoke the power of the state to seize a person's property without a *prior judicial determination that the seizure is justified*.") (emphasis added). Such extraordinary cases are the exception, not the rule. For example, a prompt post-deprivation hearing may satisfy due process when there is an emergency or when a predeprivation hearing is completely infeasible. *See Penn Cent. Corp. v. U.S. R.R. Vest Corp.*, 955 F.2d 1158, 1161 (7th Cir. 1992); *Zinermon*, 494 U.S. at 132; *see also Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 679 (1974). No such extraordinary circumstances apply here. In fact, other circuits do not require turnover under § 362(a) immediately, instead requiring a court hearing to determine whether turnover is appropriate first. *See In re Cowen,* 849 F.3d 943, 951 (10th Cir. 2017); *United States v. Inslaw, Inc.*, 932 F.2d 1467, 1474 (D.C. Cir. 1991). Thus, dispensing with prior process is not needed under these circumstances. It is instead a matter of

mere convenience for debtors to get property back without having to ask a court for a determination (and even when they are not entitled to it). That is not an exceptional circumstance requiring due process (or any prior process at all) to be brushed aside.

It must also be noted that the statute does not take possession from a party and give it to the government to serve a governmental purpose, such as law enforcement or revenue generation. Instead, the statute takes property from one person just to give it to another private individual (the bankruptcy debtor) for his own use. The City has not been able to find any other statute that has been found to be constitutional that takes property from one party just to give it to another, without providing any prior notice, hearing, or other safeguards. That is because due process is designed "to protect [a person's or entity's] use and possession of property from arbitrary encroachment—to minimize substantively unfair or mistaken deprivations of property, a *danger that is especially great when the State seizes goods simply upon the application of and for the benefit of a private party*." *Fuentes*, 407 U.S. at 81 (emphasis added). And that is exactly what happens in bankruptcy here.

The U.S. defends the statute as applied in this circuit asserting that the City has not lost a protected property interest because its lien remains after it loses its possessory interest.[3] It then asserts that due process is satisfied because the risk of mistaken deprivation is minimal, and that the City's purpose in holding possession is "merely" to generate revenue in any event. While the City certainly seeks to flush out each of these issues in a full response brief, for the purpose of this motion these are all extremely contested issues further supporting withdrawal.

First, whether or not the City loses its lien when it turns over property on pain of sanctions does not mean it does not lose any protected property interest. The

---

[3] All of the positions of the U.S. are from its Memorandum of Law attached to its motion to intervene. *See* Memo of Law, attached as Exhibit C.

— 6 —

property interest of possession itself is clearly a protected property interest. *See Connecticut v. Doehr,* 501 U.S. 1, 12 (1991) ("temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection."); *see also, Fuentes*, 407 U.S. at 84; *Penn Cent. Corp.*, 955 F.2d at 1162; *Saukstelis v. City of Chicago*, 932 F.2d 1171, 1172 (7th Cir. 1991). Ignoring the property interest of possession requires the court to ignore a good percentage of Supreme Court cases where mere possession *was* the protected property interest at issue. *See, e.g., Fuentes*, 407 U.S. at 84. The City is unquestionably deprived of its possessory interest without any prior notice or hearing once a chapter 13 bankruptcy petition is filed. No process is given at all before that is done.

Second, the assertion by the U.S. that there is no indication that there will be many, if any, mistaken or unfair deprivations under the current scheme is also extremely ill informed. This very case puts that on full display. Of the 32 plaintiffs in this case, seven were absolutely ineligible to be debtors in the first place under 11 U.S.C. § 109(h) because they had not taken the required credit counsel course prior to filing.[4] An additional plaintiff filed her bankruptcy case when she was still under an order barring her from doing so entered in one of her prior cases.[5] Because seven of these plaintiffs were ineligible to file for bankruptcy when they did, and another one was barred, there was no way any of their cases could move forward and were required to be dismissed immediately, which they were. Ineligible debtors and

---

[4] The following plaintiffs were not eligible to file the bankruptcy cases in which they assert the City violated the stay: Gloria J. Lewis (17-bk-24051); Stephen Randal Banks, III (18-bk-14402); Christina C. Thriston (18-bk-23628); Natasha Marie McDonald (18-bk-29560); Leo Paul Reeder, Jr. (19-bk-1393); Krystle Chalmers (17-bk-24261); Preal Jones (19-bk-043750. All of these cases were dismissed because the debtor did not take the credit counseling course required to be eligible to file for bankruptcy in the first place. *See* 11 U.S.C. § 109(h).

[5] Joyce Johnson (16-bk-17084) filed here bankruptcy while she was still barred from filing for bankruptcy by a subsequent court order.

barred debtors certainly are not entitled to turnover of property just to have the case immediately dismissed. This would work a fraud on the bankruptcy system. (Turnover would also be inappropriate under § 542(a), the turnover provision, because no property is of any value or benefit to an estate in a case that cannot move forward).

In a world where a hearing is required prior to the court ordering the turnover of possession, the City would have been able to present these issues, asked to have the cases dismissed immediately, and no turnover order could have been justified. However, because the City receives no prior notice or opportunity to be heard, the law unquestionably deprived the City of possession in eight out of these very bankruptcy cases by mistake—an astounding 25%. To put it another way, this is certainly not a hypothetical issue. Deprivations that were mistaken and unfair occurred in 25% of the cases currently at issue, and that only accounts for the most egregious examples, and not the more fact specific mistaken or unfair deprivations, such as when adequate protection (*e.g.*, insurance on the car) cannot be provided. The U.S. would like the court to simply focus on the lead plaintiff, Cordova, because she is one of the three out of the 32 plaintiffs that still has a bankruptcy case pending. But the *Mathews* test requires an analysis of the chances of mistaken or unfair deprivation, and the City doesn't have to look beyond this very case to show that such deprivations happen frequently and they are necessarily built into a system where no predeprivation process or safeguards whatsoever are provided.

Third, the U.S. also asserts that the City's interest is "merely" one to generate revenue and therefore is trivial and should be disregarded in the *Mathews* analysis. But *Fulton* did not say that booting and impounding vehicles serves no law enforcement purpose. It said, "on balance, this is an exercise of revenue collection more so than police power." *See In re Fulton*, 926 F.3d 916, 930 (7th Cir. 2019). The law enforcement purpose of the program must still be considered a substantial fac-

tor in the *Mathews* weighing of interests analysis. *See Grant v. City of Chicago*, 594 F. Supp. 1441, 1447 (N.D. Ill. 1984) (When weighing the *Mathews* factors, the court held that "[t]he enforcement is impossible if vehicle owners can repeatedly ignore with impunity the sanctions imposed for violation of the ordinances. The boot provides an effective, and possibly the only feasible, means of forcing repeat violators to pay for or contest the tickets they have received."). And even when simply looking at the City's interest in generating revenue, that interest is paramount.

It is more than a little surprising for the U.S. to argue that revenue generation is a trivial interest in the *Mathews* analysis. For over 200 years, the position of the U.S. has been exactly the opposite when *it* is the government that wants to generate the revenue. Since nearly the inception of the union, the federal government has argued in the context of due process that revenue generation of such paramount importance that it should work as an anvil on the scales in its favor. The Supreme Court has repeatedly held in the context of due process that revenue is "the lifeblood of government, and [a] prompt and certain availability an imperious need." *Bull v. United States*, 295 U.S. 247, 259 (1935). The U.S. successfully argued a long time ago that "the need of the government promptly to secure its revenues" weighed so heavily in its favor as to trump nearly all other interest in the due process analysis. *See United States v. Nat'l Bank of Commerce,* 472 U.S. 713, 721 (1985) *citing Phillips v. Commissioner,* 283 U.S. 589, 596 (1931); *see also, Franchise Tax Bd. of California v. Hyatt,* 538 U.S. 488, 498 (2003) (the power to generate revenue is an "essential attribute" of a government). It should go without saying that a government, big or small, local or national, cannot provide any services, essential or not, if it does not have a dollar to pay for them. The U.S. now takes the position that generating revenue is not important. The U.S. is wrong about that—with respect to its own revenues, and with respect to the City's revenues.

Ultimately, the interest of the City in booting and impounding vehicles clearly

has a law enforcement purpose that is extremely important to the *Mathews* test, *see Grant*, 594 F. Supp. at 1447, but generating revenue also cannot simply be disregarded, and may be of even more important. Because such important government interests are served in holding possession of vehicles, that property interest should not be deprived and handed over to a private party on mere application with no safeguards, and no prior notice or hearing. In weighing the City's interests against those of merely providing convenience to bankruptcy debtors so that they don't have to file a pleading to get property back, the City's interest should prevail. And this is certainly true when the risk of mistaken and unfair deprivation is so significant, and clearly present. Providing a predeprivation hearing is easy and there are certainly no extraordinary circumstances here that warrant dispensing with that norm.

### 3.2. The Significant Issue of Municipal Immunity from Punitive Damages.

The second significant non-bankruptcy federal law issue is that of the City's common-law immunity against punitive damages. In count II, the plaintiffs seek punitive damages under 11 U.S.C. § 362(k), which generally provides that "in appropriate circumstances, [the debtor] may recover punitive damages." The City has asserted in its motion to dismiss that it is immune from punitive damages under that statute by federal common law.[6] *See Cook County, Ill. v. U.S. ex rel. Chandler*, 538 U.S. 119, 129 (2003) ("Since municipalities' common law resistance to punitive damages still obtains, the general rule today is that no punitive damages are allowed unless expressly authorized by statute."); *see also, Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 259–260 (1981); *Flythe v. Dist. of Columbia*, 791 F.3d 13, 23 (D.C. Cir. 2015).

---

[6] The City has also argued the 11 U.S.C. § 106(a)(3) insulates it from punitive damages because it is clearly defined as a governmental unit by 11 U.S.C. 101(27).

As the district court correctly held in *Senne v. Vill. of Palatine,* 2013 WL 68703, at *2 (N.D. Ill. Jan. 4, 2013), "[c]onsistent with the Supreme Court's analysis, punitive damages are unavailable against the [municipality] under the [federal statute] unless the statute expressly abrogates the municipality's immunity." It went on to hold that a general authorization for punitive damages in the statute cannot suffice. *Id.* Instead, the court held that the statute must speak directly to the issue of whether punitive damages may be awarded against a municipality to overcome the immunity. *Id.* Other courts have echoed that holding that direct and express language is required to abrogate the immunity. *See Krekelberg v. City of Minneapolis*, 2018 WL 3621031, at *12 (D. Minn. July 30, 2018); *Mallak v. City of Brainerd*, 2017 WL 3668759, at *17 (D. Minn. Aug. 23, 2017); *Pascocciello v. Interboro Sch. Dist.*, 2006 WL 1284964, at *8 (E.D. Pa. May 8, 2006). Here, the damages sought in count II are clearly punitive damages and there is no express authorization. In fact the opposite is true. *See* 745 ILCS 10/2-102 ("Notwithstanding any other provision of law, a local public entity is not liable to pay punitive or exemplary damages in any action brought directly or indirectly against it by the injured party or a third party."). Therefore, this issue also involves a significant non-bankruptcy question that an Article III court should resolve.

The requirements for mandatory withdrawal under 28 U.S.C. § 157(d) are satisfied. The motion should be granted.

### 3.3. Permissive Withdrawal also applies.

28 U.S.C. § 157(d) also gives the district court discretion to withdraw the reference for cause. There are a lot of factors that are relevant when determining whether the district court should withdraw the reference, but "where a substantial constitutional question is presented" the Article III court should exercise that discretion and take control. *See In re Texaco Inc.*, 84 B.R. 911, 925 (S.D.N.Y. 1988). As stated,

determination of the claim in the complaint requires a substantial interpretation of the Fifth Amendment. Again, the determination of such an important constitutional issue that will affect not just the City, but every person or entity with possession of property when a bankruptcy is filed, should be determined by an Article III court.

## 4. Conclusion

Both mandatory and permissive withdrawal apply to this adversary preceding and therefore the City respectfully requests that this Court enter an order withdrawing the reference and exercise jurisdiction over this case.

DATED: SEPT. 20, 2019

RESPECTFULLY SUBMITTED,
**THE CITY OF CHICAGO**

Mark Flessner
Corporation Counsel

By: /s/ David Paul Holtkamp
Senior Counsel

David Paul Holtkamp (6298815)
**CITY OF CHICAGO,**
   **DEPARTMENT OF LAW**
Chicago City Hall
121 N LaSalle St., Ste. 400
Chicago, IL 60602
Tel: (312) 744-6967
David.Holtkamp2@cityofchicago.org

## CERTIFICATE OF SERVICE

    I, David Paul Holtkamp, an attorney, hereby certify that on September 20, 2019, I caused a copy of the attached Motion to be served via the court's electronic noticing system for Registrants on all those registered in this case to receive such notice.

                                                /s/ David Paul Holtkamp