**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE ) | CHAPTER 13 |
| ) | |
| **EMELIDA CORDOVA**, ) | CASE NO. 19-BK-06255 |
| ) | |
| DEBTOR. ) | HON. TIMOTHY A. BARNES |
| _____) | |
| ) | |
| **EMELIDA CORDOVA, ET AL.**, ) | |
| ) | |
| PLAINTIFFS, ) | |
| V. ) | ADV. PROC. NO. 19-AP-00684 |
| ) | |
| **CITY OF CHICAGO**, ) | |
| AN ILLINOIS MUNICIPAL CORPORATION, ) | HEARING DATE: AUGUST 6, 2020 |
| ) | HEARING TIME: 2:00 P.M. |
| Defendant. ) | |

**CITY OF CHICAGO'S REPLY TO
UNITED STATES' MEMORANDUM OF LAW REGARDING THE
CONSTITUTIONALITY OF 11 U.S.C. § 362(a)(3) AS APPLIED
BY THE SEVENTH CIRCUIT [DOCKET 89]**

The City of Chicago ("City"), by its attorney, Mark A. Flessner, Corporation Counsel, replies to United States Memorandum of Law Regarding the Constitutionality of 11 U.S.C. § 362(a)(3) As Applied by the Seventh Circuit [Docket 89] ("U.S. Memorandum"). For the reasons stated below, the arguments set forth in the U.S. Memorandum are incorrect or at best unpersuasive. This court should conclude that Section 362(a)(3), as applied by the Seventh Circuit under *Thompson v. General Motors Acceptance Corp.*, 566 F.3d 699 (7th Cir. 2009), and *In re Fulton*, 926 F.3d 916 (7th Cir. 2019), deprives the City of property without due process of law and thus violates the Fifth Amendment to the Constitution, and grant the City's pending Motion to Dismiss [Docket 11] ("Motion").

**I. STATUS OF *FULTON***

The Seventh Circuit's ruling in *Fulton* is central to this proceeding. *Fulton* is currently on

1

appeal pursuant to a writ of certiorari granted by the Supreme Court. *City of Chicago v. Fulton*, case no. 19-357 (S.Ct.). Although argument of the case was delayed by the pandemic, the case has now been re-set for argument on October 13, 2020. If *Fulton* is reversed, arguments regarding the Constitutionality of its interpretation of Section 362(a)(3) will be moot.

At the time the U.S. Memorandum was originally drafted (see Docket 49 Exhibit A), the United States had not taken a position on whether the City violated the automatic stay or whether *Thompson* and *Fulton* were correctly decided. U.S. Memorandum at 5. Subsequently, it did take a position: the United States filed an amicus brief in the Supreme Court case in support of the City, arguing for reversal of *Fulton*. See Brief of Unites States as Amicus Curiae in Support of Petitioner, *City of Chicago v. Fulton*, case no. 19-357 (S.Ct.), docketed February 10, 2020 ("Amicus Brief").

## II.  ARGUMENT

Under the Seventh Circuit's reading of Section 363(a)(3), any creditor in possession of property of a bankruptcy estate is required, immediately upon demand, to turn over that property to, in a Chapter 13 case, the debtor. The Seventh Circuit's ruling provides no opportunity prior to turnover to assert any defenses or to obtain a judicial ruling on the propriety of turnover. The City has previously explained how this scheme fails to provide due process. See Motion, pp. 14 et seq. The United States' arguments to the contrary are inapposite and unpersuasive.

**A.  The City's  Protected Property Interest**

The United States defends the statute as applied in this circuit first by asserting that the City has not lost a protected property interest because its lien remains in some fashion after it loses its possessory interest. This argument first attempts to avoid a key point: whatever the status of the City's lien, the City is being deprived of possession. The property interest of possession itself is clearly a protected property interest. See *Connecticut v. Doehr*, 501 U.S. 1, 12 (1991); *Fuentes v. Shelvin*, 407

U.S. 67, 84 (1972); *Penn Cent. Corp. v. U.S. R.R. Vest Corp.*, 955 F.2d 1158, 1162 (7th Cir. 1992); *Saukstelis v. City of Chicago*, 932 F.2d 1171, 1172 (7th Cir. 1991). Ignoring the property interest of possession requires the court to ignore a number of Supreme Court cases where mere possession was the protected property interest at issue. See, *e.g.*, *Fuentes*, 407 U.S. at 84. The City is unquestionably deprived of its possessory interest without any prior notice or hearing once a chapter 13 bankruptcy petition is filed. No process is given at all before that is done.

The United States glosses over this issue with a single footnote, U.S. Memorandum at p. 7 n.3, alluding to the statement in *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 207 (1983), that adequate protection rights "replace the protection afforded by possession[.]" That does not answer the question here, because the whole point of the *Thompson/Fulton* ruling is that the City must give up possession *before* it receives adequate protection. It loses its possessory interest without knowing whether it will actually receive adequate protection if ordered—indeed, without any determination that it is even possible for something other than possession to adequately protect its interest. Moreover, *Whiting Pools* involved a proceeding under 11 U.S.C. § 542(a), and under Section 542, adequate protection is a precondition for turnover.

The United States also argues that the City's property interest is of insufficient significance for the purposes of the three-part test of *Mathews v. Eldridge*, 424 US 319 (1976), under which the first factor considered is the interest affected. The cases cited by the City above and in the Motion establish that a possessory interest is subject to due process protection even when the deprivation is limited in scope or for a limited period of time. But it can hardly be seriously suggested that the City's possessory interest in an impounded vehicle is not significant and meaningful regardless of whether the City may retain some sort of lien without it.

The United States here makes the common error of disregarding the universe outside of bankruptcy. There are mechanisms in bankruptcy to ensure that a creditor's interest in collateral is

3

protected, at least in the context of the case (although those mechanisms are almost uniformly far more effective in theory than in practice).  But the very real threat to the City (or any other secured creditor who loses a possessory lien) comes when the case is dismissed before completion, as most Chapter 13 cases are.

The danger faced by the City upon losing its possessory interest is that, once he or she has possession of a vehicle again, the case will be dismissed and the City will have lost its collateral without having received payment of its debt.  The vehicle in the meantime could be sold or destroyed, and even if it were not, there is no clear mechanism to enforce the lien that the Seventh Circuit assures us the City retains, and even if there were, that would also be dependent on locating the vehicle again. Any order entered granting some measure of adequate protection, after the City has given up possession, would be of similarly limited utility when the debtor is uncommunicative and uncooperative and the vehicle is no longer readily at hand.

These are not abstract or speculative dangers.  This has been happening with regularity for years.  In fact, there have been multiple criminal cases in this district in which individuals have been convicted of bankruptcy fraud offenses for running operations which take advantage of the potential for abuse built into the *Thompson/Fulton* procedure.  These individuals assisted owners of impounded cars to file bankruptcy petitions for the sole purpose of retrieving possession of cars, after which the cases were abandoned and ultimately dismissed on the trustee's or court's motions.  These schemes have continued for years, even after the conviction of Daniel Rankins in case number 13-cr-331.  More recently at least four other people have been convicted on similar schemes, including Delores Rankins (Daniel Rankins' mother) and Fenton Flowers in case number 17-cr-778, and Shaun Grandison in case number 18-cr-418 and and Damien Parker in case number 18-cr-419.  Representative sentencing memoranda from these cases are appended as Exhibits A (Daniel Rankins), B (Fenton Flowers) and C (Shaun Grandison), and describe the violations and schemes perpetrated by the defendants.  These

4

schemes work only because the City is deprived of its possessory interest in the vehicles upon filing of a petition. And the cases in which these criminal defendants were involved are far from the only cases following the pattern of file, obtain car, abandon case. The scenario is sadly common.

Also, contrary to the United States' assertion, in the absence of possession the City does in fact lose perfection of its lien. The Seventh Circuit's assertion that the City can maintain perfection of its lien absent possession, *Fulton*, 926 F.3d at 928, is simply an incorrect statement of Illinois law. Liens are creatures of state law, and the Court of Appeals can interpret state law and those interpretations will be binding on lower courts, but the Court of Appeals cannot add provisions to the Illinois Compiled Statutes that are not there. Both of the methods of perfection identified by the court in *Fulton*—title notation and recording with the Secretary of State—are governed by statute, and in each case, the statutes allow for perfection by those methods only for certain specific liens, and the City's liens are unambiguously excluded. See 625 ILCS 5/3-201(b) (liens of government units excluded from perfection by notation on title), 810 ILCS 5/9-109 (applicability of Uniform Commercial Code, providing for perfection by filing with Secretary of State). Under Illinois law, those methods are unavailable to the City, and the Seventh Circuit cannot make a substantive change in Illinois state law simply by proclamation. Similarly, the idea that the lien is perfected somehow by being acknowledged in the bankruptcy court is unsupported and unsupportable. There is no circumstance in which parties remote from a bankruptcy case are charged with knowledge of the contents of documents filed in that case. No one purchasing a car from a private seller is required to research whether that person filed bankruptcy, and consult the case file to determine whether somewhere in some document therein is some provision that could have the effect of preserving a no-longer-apparent possessory lien.

The United States refers to the City's secured status and the priority of its claim determined as of petition date. That's well and good while the case is pending, but statistically the case will most likely be dismissed before completion and at that point whatever rights the City had in the bankruptcy

5

context become essentially meaningless. At that point, the City's loss of its possessory interest becomes a very real issue indeed. The United States here makes the common error of disregarding the universe outside of bankruptcy. There are mechanisms in bankruptcy to ensure that a creditor's interest in collateral is protected, at least in the context of the case (although those mechanisms are almost uniformly far more effective in theory than in practice). But the very real threat to the City (or any other secured creditor who loses possession of collateral) comes when the case is dismissed before completion, as most Chapter 13 cases are.

The United States' contention that the City is not deprived of a protected property interest is thus incorrect, and the United States suggestion that the City's loss of its possessory interest is not significant or does not implicate important concerns is simply insupportable.

## 2. Risk of Erroneous Deprivation

Risk of erroneous deprivation is the second part of the *Matthews* test, and the *Thompson/Fulton* procedure presents a very substantial possibility that the City will be erroneously deprived of its possessory interest. The United States does not seriously engage this issue, mainly making entirely speculative arguments regarding what sort of adequate protection the City might be able to obtain, and entirely speculative assertions that various after-the-fact remedies and procedures would be effective to undo the damage. The question is not whether the City could get adequate protection or what form that protection might take. The outcome of that analysis has nothing to do with whether in any given case the City's loss of its possessory interest would be erroneous or not. Neither, for that matter, does the availability of various other after-the-fact remedies such as stay relief or dismissal. An erroneous deprivation is still an erroneous deprivation.

The assertion by the U.S. that there is no indication that there will be many, if any, mistaken or unfair deprivations under the current scheme is also extremely ill informed. This very case puts that on full display. Multiple plaintiffs in this case were absolutely ineligible to be debtors in the first place

6

under 11 U.S.C. § 109(h) because they had not taken the required credit counseling course prior to filing, including, for example, plaintiffs Gloria J. Lewis (17-bk-24051); Stephen Randal Banks, III (18-bk-14402); Christina C. Thriston (18-bk-23628); Natasha Marie McDonald (18-bk-29560); Leo Paul Reeder, Jr. (19-bk-1393); Krystle Chalmers (17-bk-24261); and Preal Jones (19-bk-043750). All of these cases were dismissed because the debtor did not get credit counseling.  Plaintiff Joyce Johnson (16-bk-17084) filed her bankruptcy case in violation of an order from one of her prior cases barring her from doing so. There was no way any of these cases could have moved forward and all were required to be dismissed immediately, which they were. Clearly ineligible debtors and barred debtors have no claim to the benefits that bankruptcy offers to legitimate debtors, such as turnover of property. (Turnover would be inappropriate under 11 U.S.C. § 542(a) because no property is of any value or benefit to an estate in a case that is destined for prompt dismissal.)

In a world where a hearing is required prior to the court ordering the turnover of possession, the City would have been able to present these issues, asked to have the cases dismissed immediately, and no turnover order could have been justified. However, because the City receives no prior notice or opportunity to be heard, the law unquestionably would have deprived the City of possession in at least eight of these very bankruptcy cases by mistake. To put it another way, this is certainly not a hypothetical issue. Deprivations that were mistaken and unfair would have occurred a number of the cases currently at issue, and that only accounts for the most egregious examples, and not the more fact-specific mistaken or unfair deprivations, such as when adequate protection (*e.g.*, insurance on the car) cannot be provided.

The *Mathews* test requires an analysis of the chances of mistaken or unfair deprivation, and the City doesn't have to look beyond this very case to show that such deprivations happen frequently and they are necessarily built into a system where no predeprivation process or safeguards whatsoever are provided.

### 3. Interest of Party Seeking Deprivation

The United States also asserts that the City's interest is "merely" to generate revenue and therefore is trivial and should be disregarded in the *Mathews* analysis. It is more than a little surprising for the United States to argue that revenue generation is a trivial interest in the *Mathews* analysis. For over 200 years, the position of the United States has been exactly the opposite when *it* is the government that wants to generate the revenue.

Since nearly the inception of the union, the federal government has argued in the context of due process that revenue generation of such paramount importance that it should work as an anvil on the scales in its favor. The Supreme Court has repeatedly held in the context of due process that revenue is "the lifeblood of government, and [a] prompt and certain availability an imperious need." *Bull v. United States*, 295 U.S. 247, 259 (1935). The U.S. successfully argued long ago that "the need of the government promptly to secure its revenues" weighed so heavily in its favor as to trump nearly all other interest in the due process analysis. *See United States v. Nat'l Bank of Commerce,* 472 U.S. 713, 721 (1985) *citing Phillips v. Commissioner,* 283 U.S. 589, 596 (1931); *see also, Franchise Tax Bd. of California v. Hyatt,* 538 U.S. 488, 498 (2003) (the power to generate revenue is an "essential attribute" of a government). It should go without saying that a government, big or small, national or municipal, cannot provide any services, essential or not, if it does not have revenue to pay for them. The United States, in this proceeding only, now takes the position that generating revenue is not important. Simultaneously, it states in its Amicus Brief in the *Fulton* Supreme Court case that it "is the Nation's largest creditor," i.e., it is owed money, and it "therefore has a substantial interest in the question presented," i.e., whether property must indeed be turned over immediately upon filing of a petition. Amicus Brief at 1.

And, revenue collection is not the City's only interest implicated here. Even the Seventh Circuit in *Fulton* did not say that booting and impounding vehicles serves no law enforcement purpose. It said,

8

"on balance, this is an exercise of revenue collection more so than police power." *See In re Fulton*, 926 F.3d 916, 930 (7th Cir. 2019). The law enforcement purpose of the program must still be considered a substantial factor in the *Mathews* weighing of interests analysis. *See Grant v. City of Chicago*, 594 F. Supp. 1441, 1447 (N.D. Ill. 1984) (When weighing the *Mathews* factors, the court held that "[t]he enforcement is impossible if vehicle owners can repeatedly ignore with impunity the sanctions imposed for violation of the ordinances. The boot provides an effective, and possibly the only feasible, means of forcing repeat violators to pay for or contest the tickets they have received.").

The United States focuses on the Bankruptcy Code's goals of getting debtors back on their feet, but in operation the Code undertakes a careful balancing of the interests of debtors *and* creditors in furtherance of its goals. The City has powerful interests implicated in this matter, which the United States mischaracterizes or ignores.

### C. CONCLUSION

Ultimately, the interest of the City in booting and impounding vehicles clearly has a law enforcement purpose that is extremely important to the *Mathews* test, *see Grant*, 594 F. Supp. at 1447, but generating revenue also cannot simply be disregarded, and may be of even more significance. Because such important government interests are served in holding possession of vehicles, that property interest should not be taken and handed over to a private party on mere application with no safeguards, and no prior notice or hearing. In weighing the City's interests against those of merely providing convenience to bankruptcy debtors so that they don't have to file a pleading to get property back, the City's interest should prevail. And this is certainly true when the risk of mistaken and unfair deprivation is so significant, and clearly present. Providing a predeprivation hearing is easy and there are certainly no extraordinary circumstances here that warrant dispensing with that norm.

Accordingly, for the reasons set forth here and in the City's Motion, the court should conclude

that the process required under *Thompson* and *Fulton* does not provide due process, and dismiss this adversary proceeding.

| | |
|---|---|
| Date:   July 23, 2020 | Respectfully submitted, |
| | |
| Mark A. Flessner | THE CITY OF CHICAGO |
| Corporation Counsel | |
| Charles A. King | Mark A. Flessner |
| Assistant Corporation Counsel – Senior | Corporation Counsel |
| Chicago Department of Law | |
| 121 N. LaSalle St., Suite 400 | By:    /s/ Charles A. King |
| Chicago, IL  60602 | Assistant Corporation Counsel – Senior |
| 312-742-0019 | |
| chuck.king@cityofchicago.org | |

## CERTIFICATE OF SERVICE

      I, Charles A. King, an attorney, hereby certify that on July 23, 2020, I caused a copy of the attached Reply to be served via the court's electronic noticing system for Registrants on those designated to receive such service as provided on the attached Service List.

                                                                /s/ Charles A. King

## SERVICE LIST

Registrants
(Via CM/ECF)

| | |
|---|---|
| Ross H. Briggs | r-briggs@sbcglobal.net |
| Andrea H. Handel | andrea.handel@usdoj.gov |