UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) ) | Case No. 19bk06255 |
| Emelida Cordova, | ) ) ) | Chapter 13 |
| Debtor. | ) ) | |
| | ) | |
| Emelida Cordova, Sabrina M. Hightower, Kaila Selice Hill, Demiko J. Little, Shelia Holman, Tony R. Jones, Joyce L. Johnson, Annie B. Williams, Larry Bernard Cherry, Gloria Jean Lewis, Stephen Randall Banks, III, Christina C. Thirston, Krystle Chalmers, Natasha Marie McDonald, Andrew Christopher Ferrell, Leo Paul Reeder, Jr., Calvin Dixon, Breonca Hyles, Preal Jones, Tevida B. Nocentelli, Roshelle Kinchen, Felix Rivera, Craig E. Payne & Harriett Payne, Larry J. Outlaw, Stephen D. Collum, Bernard Powell, Marilyn Pagan, Helen E. Henning, Christopher Campbell, Tyrone Williams, Tabitha Chatmon, Magic J. Jones, Dwayne E. Kennedy, Tatiana Marshall, Kendric Sandifer, Dontrea S. Jones, Adrienne L. Butler, Trevor E. Baxter, Taquesha Newton, Ronald B. Williams, Lamont McBride, Larry B. Purnell, Laterence Mitchell, Rashanda Hogan-Mitchell, Ira Haymore, Brandon W. Brown, Camelia Binder, Ameshia Odom, Montine Osbey, Deion Sanders, Victor G. Perez, Nutasha L. Davis, Steven A. Williams, August Lenora Brown and Maricela Barrera-Perez, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Adv. No. 19ap00684 Judge Timothy A. Barnes |
| Plaintiffs, v. City of Chicago, Defendant. | ) ) ) ) ) ) ) ) ) ) ) | |

TIMOTHY A. BARNES, Judge.

MEMORANDUM DECISION

This matter comes on for consideration on the Motion to Dismiss Ninth Amended Adversary Complaint [Adv. Dkt. No. 118] (the "Motion") brought by defendant City of Chicago (the "City") seeking dismissal of the Ninth Amended Class Action Adversary Complaint for Actual and Punitive Damages for Violation of the Automatic Stay and Failure to Turnover Property [Adv. Dkt. No. 113] (the "Complaint"), brought by plaintiff Emelida Cordova and other joined plaintiffs (collectively, the "Plaintiffs"), alleging and requesting relief for the City's violation of

sections 362(a)(4), (6), (7) and 542(a) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").  The Motion is opposed by the Plaintiffs.

This matter consists of a putative class action complaint against the City regarding the refusal to release impounded cars to debtors in bankruptcy, acts that were recently before the Supreme Court in *City of Chicago v. Fulton*, — U.S. —, 141 S. Ct. 585 (2020).  In the Complaint, the Plaintiffs allege that the acts in violate the automatic stay and turnover provisions in the Bankruptcy Code. They seek actual and punitive damages, attorneys' fees, costs of litigation, the value of the Plaintiffs' loss of property and any further relief and/or equitable sanctions as may be just and proper.  The Plaintiffs seek to certify their claims as a class action.

The City seeks with the Motion to have the matter dismissed in its entirety.  The Motion is largely predicated on the presumption that the Supreme Court's ruling in *Fulton* forecloses the Plaintiffs' claims under sections 362(a)(4), (6) and (7).  The Court in *Fulton* ruled that violation of the automatic stay under section 362(a)(3) requires an affirmative act beyond mere retention of bankruptcy estate property.  By extension, the City argues that violation of other automatic stay provisions, sections 362(a)(4), (6) and (7), also require an affirmative act.  The City asserts that its retention of estate property is not such an affirmative act, and therefore, the Court's ruling in *Fulton* forecloses the Plaintiffs' claims.

The Court in *Fulton*, however, made clear that its ruling was limited to section 362(a)(3).  As a result and for the reasons more fully explained below, *Fulton* does not expressly nor impliedly foreclose the Plaintiffs' claims under sections 362(a)(4), (6) and (7), as a matter of law.  Further, the City's arguments in relation to section 542(a) are unavailing.  Section 542(a) compels compliance without the need for a court order and the Plaintiffs' allegations sufficiently plead a cause of action entitled to proceed.

Notwithstanding the foregoing, the Plaintiffs' claim under section 362(a)(7) must be dismissed without prejudice and with leave to amend.  While the Plaintiffs have sufficiently alleged claims under sections 362(a)(4), (6) and 542(a), they have failed to do so for their section 362(a)(7) claim.  As a result, only the claims under section 362(a)(4), (6) and 542(a) survive the Motion.  As the court cannot find that amendment of the section 362(a)(7) claim would be futile, however, dismissal of the claim will be without prejudice and with leave to amend.

The Motion also raises the propriety of imposing punitive damages against the City.  In this regard, the motion is well taken, and the Plaintiffs' request for punitive damages is dismissed. Section 106(a) of the Bankruptcy Code is a valid exercise of congressional authority under the Bankruptcy Clause and the abrogation of State sovereign immunity and the terms and conditions regarding the same set forth in section 106 govern this matter.  Section 106(a)(3) expressly excludes from abrogation punitive damages against a governmental unit, which the City unquestionably is. As a result, the City is immune from the Plaintiffs' punitive damages claim.

Finally, the Motion seeks to dismiss the Plaintiffs' request for class certification.  Class certification is, however, a matter for consideration in a separate motion and not properly raised in a motion to dismiss.  In that respect the Motion will be denied, but the court will set separate deadlines for a motion to certify class and any opposition to the same.  Each party will be afforded a full and fair opportunity to be heard in the appropriate manner.

For the reasons more fully set forth below, upon review of the parties' respective filings, the City's Motion will therefore be, by separate order entered concurrently herewith, GRANTED IN PART and DENIED IN PART in the manner described herein.

JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under the Bankruptcy Code. 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b). District courts may refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred has statutory authority to enter final judgment on any proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). Bankruptcy judges must therefore determine, on motion or *sua sponte*, whether a proceeding is a core proceeding or is otherwise related to a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(3). As to the former, the bankruptcy court may hear and determine such matters. 28 U.S.C. § 157(b)(1). As to the latter, the bankruptcy court may hear the matters, but may not decide them without the consent of the parties. 28 U.S.C. §§ 157(b)(1), (c). Absent consent, the bankruptcy court must "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

In addition to the foregoing considerations, a bankruptcy judge must also have constitutional authority to hear and determine a matter. *Stern v. Marshall,* 564 U.S. 464 (2011). Constitutional authority exists when a matter originates under the Bankruptcy Code or, in noncore matters, where the matter is either one that falls within the public rights exception, *id.*, or where the parties have consented, either expressly or impliedly, to the bankruptcy court hearing and determining the matter. *See, e.g., Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 669 (2015) (parties may consent to a bankruptcy court's jurisdiction); *Richer v. Morehead*, 798 F.3d 487, 490 (7th Cir. 2015) (noting that "implied consent is good enough.")

All counts in the Complaint are based either on alleged violations of the automatic stay under section 362(a) or the turnover obligation under section 542(a). A request for sanctions for alleged violations of the automatic stay may only arise in a case under the Bankruptcy Code and, therefore, is a core proceeding and within the court's constitutional authority. 11 U.S.C. § 363(k); 28 U.S.C. § 157(b)(2)(O); *Gecker v. Gierczyk (In re Glenn)*, 359 B.R. 200, 203 (Bankr. N.D. Ill. 2006) (Black, J.) ("[T]he cause of action for violating the automatic stay under section 362(k)(1) does not appear to have had a counterpart in eighteenth century England."). Likewise, an action for turnover under section 542 also arises only under the Bankruptcy Code, and therefore, is a core proceeding and within the court's constitutional authority. 11 U.S.C. § 542(a); 28 U.S.C. § 157(b)(2)(E); *see Boston Reg'l Med. Ctr., Inc. v. Reynolds (In re Boston Reg'l Med. Ctr.)*, 265 B.R. 645, 650 (Bankr. D. Mass. 2001). It follows that a motion to dismiss such actions is also a matter within the court's jurisdiction and constitutional authority. *Handler v. Moore (In re Moore)*, 620 B.R. 617, 625 (Bankr. N.D. Ill. 2020)

(Barnes, J.).  Further, no party has contested the jurisdiction or authority of this court in entering final orders in this matter.

Accordingly, the court has the jurisdiction, statutory authority and constitutional authority to hear and determine the Motion.

BACKGROUND

The Plaintiffs are each residents of the City who had their vehicles impounded by the City for unpaid vehicle infraction fines between 2016 to 2019.[1]  After their vehicles were impounded, each Plaintiff commenced a case under chapter 13 of the Bankruptcy Code.[2]

Under chapter 13, a debtor proposes a plan that repays creditors a portion of the debt owed out of the debtor's income as earned.  *See, e.g.*, 11 U.S.C. § 1322(a)(1).  To effectuate that plan, debtors may propose to retain assets that might under another chapter of the Bankruptcy Code be liquidated with the proceeds going to creditors.  *Harris v. Viegelahn*, 575 U.S. 510, 512 (2015).  As vehicles are in most cases central to a debtor's ability to earn the income on which a plan is predicated, *see In re James*, Case No. 12-23121, 2014 WL 5785316, at *1 (Bankr. D. Kan. Nov. 4, 2014) ("Ninety-one percent of adults commute to work using their personal vehicles."), a chapter 13 debtor's ability to retain her vehicle is a crucial factor that may determine the success of the case and thus may determine whether creditors as a whole have their recoveries maximized.

To afford debtors the breathing room to reorganize and creditors as a whole the right to an equitable recovery, the commencement of a bankruptcy case automatically implements several protective measures.

First, the commencement of the case gives rise to an automatic stay that protects both debtors individually but also assets of debtors and bankruptcy estates.  11 U.S.C. § 326(a).

Second, any entity in possession on the commencement of a case of property that a trustee may use, sell, or lease is required by statute to deliver to the trustee that property, or the value thereof, and account for the same.  11 U.S.C. § 542(a).

Accordingly, upon commencement of their chapter 13 case, the Plaintiffs requested that the City deliver the Plaintiffs' vehicles to them.  The City refused.

The Plaintiffs allege, and the City does not dispute, that the City demanded an upfront lumpsum amount, often over $1,000.00, and treatment of its claim in the Plaintiffs' plan as fully secured in exchange for turnover of the vehicles.  The Plaintiffs further allege that this amount bore no relation to the fair market value of the impounded vehicle, or its diminution of value as a result

---

[1]     The facts herein are drawn from the Complaint but also from the court's docket and papers filed in this case in order to produce a readable narrative.  *See In re Prate*, Case No. 19bk9980, 2021 WL 5150156 at *2 n.2 (Bankr. N.D. Ill. Nov. 5, 2021) (Goldgar, J.).  All well pleaded facts are taken as true for the purposes of determining a motion to dismiss.  *Anchorbank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

[2]     The Complaint contains the same factual allegations for all joined Plaintiffs.  Compl. at ¶¶ 6–59.

4

of passage of time.  For those that could not afford to make the upfront payment, the City continued to retain the vehicles.

On May 6, 2019, the Plaintiffs commenced this proceeding.  At that time, controlling law of the Court of Appeals for the Seventh Circuit dictated that the actions alleged by the Plaintiffs would violate the automatic stay, specifically section 362(a)(3) of the Bankruptcy Code.  Section 362(a)(3) provides that "a petition filed [under the Bankruptcy Code] operates as a stay, applicable to all entities, of any act … to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).  With respect to such acts to exercise control, the Seventh Circuit found in *Thompson v. GMAC, LLC*, 566 F.3d 699, 703 (2009), that "the act of passively holding onto an asset constitutes 'exercising control' over it, and such action violates section 362(a)(3) of the Bankruptcy Code."

While the clear language of *Thompson* might have led to an expedited judgment in favor of the Plaintiffs in this matter, the City was actively challenging the propriety of *Thompson* in other matters when this adversary proceeding was commenced.  As a result, the court at the request of the parties stayed this proceeding pending an outcome of those challenges in the higher courts.

In response to those challenges, in 2020, the Supreme Court narrowed that holding of *Thompson*.  *Fulton*, 141 S. Ct. at 590 (2020) ("[T]he language of [section] 362(a)(3) implies that something more than merely retaining power is required to violate the disputed provision.").  At the same time, the majority ruling recognized that exercise of control does not rule out omissions that might qualify as "acts" in certain contexts, "control" meaning "to have power over."  *Id.*  Still, the Supreme Court found that any ambiguity must be resolved in favor of the City because a separate remedy against the City existed under section 542(a) of the Bankruptcy Code.  *Id.*

As a result, on May 20, 2021, the Plaintiffs amended further their original, as already amended, complaint by filing the Complaint at bar.  The Complaint alleges that the City's refusal to turn over the vehicles violated other provisions of the automatic stay, namely sections 362(a)(4), (6) and (7).  The Complaint also alleges that the City has violated the turnover requirements in section 542(a).

The Complaint consists of three Counts, as follows:

In Count I, the Plaintiffs request an order declaring that the City's conduct violated the automatic stay and turnover provisions.  Specifically, the Plaintiffs allege that the City's conduct violates sections 362(a)(4), (6) & (7) and 542(a) of the Bankruptcy Code.  They request actual damages, attorney's fees, costs of litigation, accounting for the value of Plaintiffs' loss of property and any further relief as may be just and proper.

In Count II, the Plaintiffs request punitive damages of five million dollars and any further equitable remedies.  The Plaintiffs' request is based on the allegation that the City devised a scheme to collect from the Plaintiffs in order to alleviate its budgetary crisis by enacting an ordinance amendment to grant the City a possessory lien in the impounded vehicles.  The Plaintiffs argue that the City intentionally and strategically refuses to file a motion for relief from the automatic stay or a motion for adequate protection so that chapter 13 debtors fail to complete their plans and the City may then proceed to collect the entire debt owed to it.

In Count III, the Plaintiffs seek to certify their claims as a class action.

On June 17, 2021, the City filed the Motion, seeking to dismiss all of the Plaintiffs' claims. Briefing on the Motion was set by this court in an order dated June 24, 2021 [Adv. Dkt. No. 126] (the "Briefing Order").  In accordance with the Briefing Order, the Plaintiffs filed Plaintiffs' Response in Opposition to to [sic] Defendant's Motion to Dismiss Ninth Amended Adversary Complaint [Adv. Dkt. No. 128] (the "Response") on June 30, 2021, and the City filed its Reply in Support of Motion to Dismiss Ninth Amended Adversary Complaint [Adv. Dkt. No. 131] (the "Reply") on July 16, 2021.  The briefing concluded with the Reply.

Without authorization of this court, however, and in violation of the terms of the Briefing Order, both parties conducted what was essentially another round of briefing on the Motion.  On July 19, 2021, the Plaintiffs filed the Plaintiffs' Motion to Strike New Defense Raised in Reply of Defendant or, Alternatively[,] for Leave to File a Sur Reply [Adv. Dkt. No. 132] (the "Strike Motion").  The City filed on July 20, 2021, a Notice of Objection [Adv. Dkt. No. 133] and on July 21, 2021, a Response in Opposition to Plaintiffs' Motion to Strike New Defense Raised in Reply of Defendant or, Alternatively[,] for Leave to File a Sur Reply [Adv. Dkt. No. 134].  Finally, the Plaintiffs' Reply to Defendant City's Response in Opposition to Plaintiffs' Motion to Strike [Adv. Dkt. No. 135] was filed by the Plaintiffs on July 22, 2021.

A hearing on the City's Motion (the "Hearing") was conducted on August 5, 2021, where this court announced to the parties the essence of its decision, taking the matter under advisement with this Memorandum Decision to follow.  This Memorandum Decision was, quite obviously, delayed but nonetheless constitutes this court's actual ruling on the Motion.  Irrespective of what may have been outlined to the parties at the Hearing, this Memorandum Decision governs in all respects.

In making this determination, the court has reviewed and considered the Complaint, the Motion, the Response and the Reply, including any exhibits attached to each of the foregoing. Though these items do not constitute an exhaustive list of the filings in the above-captioned bankruptcy case, the court has taken judicial notice of the contents of the docket in this matter.  *See Levine v. Egidi*, Case No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) (Goldgar, J.) (recognizing same).

For the reasons more fully stated below, however, the court has not considered the Strike Motion and filings related thereto, other than for the purposes of explaining why each is improper.

APPLICABLE STANDARDS

A.    Motion to Dismiss

Rule 12 of the Federal Rules of Civil Procedure (the "Civil Rules") provides, in pertinent part, that a party may seek dismissal of a complaint for the "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6) (made applicable to this adversary proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")).  As this court has stated:

> A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In assessing sufficiency, the court views the complaint "in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor.'" *Anchorbank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

*Muhammad v. Reed* (*In re Reed*), 532 B.R. 82, 87–88 (Bankr. N.D. Ill. 2015) (Barnes, J.).

The requirement that a complaint must state a plausible claim means that the allegations must raise a plaintiff's right to relief above a "speculative level." *Brandt v. PlainsCapital Leasing, LLC* (*In re Equip. Acquisition Res., Inc.*), 502 B.R. 784, 791 (Bankr. N.D. Ill. 2013) (Barnes, J.) (*citing Twombly*, 550 U.S. at 570).  Thus the standard for evaluating the sufficiency of the complaint "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Anchorbank,* 649 F.3d at 614 (citation omitted); *see also Doe v. Smith,* 429 F.3d 706, 708 (7th Cir. 2005).

In taking into account whether a plaintiff has stated a plausible claim, the court considers the complaint itself, as well as "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).  As to judicial notice, there is no question that a court may take judicial notice of its own docket. *Egidi*, 1993 WL 69146, at *2. Judicial notice extends beyond that, however.  Federal Rule of Evidence 201 permits a court to take judicial notice of a fact not subject to reasonable dispute that is generally known with the trial court's territorial jurisdiction.  Fed. R. Evid. 201(b)(1); *see also Amling v. Harrow Indus. LLC*, 943 F.3d 373, 376 (7th Cir. 2019) (a court may take notice of the docket of related federal cases).  That notice can be taken *sua sponte* and at any stage in a proceeding.  Fed. R. Evid. 201(c)(1) & (d).[3]

Further, the court considers the rules of pleading set forth in the Civil Rule 8 and, as applicable, Civil Rule 9 (made applicable to this adversary proceeding by Bankruptcy Rules 7008 and 7009, respectively).

The City points out that this court may dismiss a claim on the basis of a dispositive issue of law under the Civil Rule 12(b)(6). *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).  In *Neitzke*, the Supreme Court stated, "[i]f, as a matter of law, 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations,' a claim must be dismissed without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." *Id.* at 327.  The Motion is, in large part, predicated on *Neitzke*.  The City argues that no legal theory could prevail even if the facts alleged in the Complaint are true.

While *Neitzke* might apply in a general sense, *Neitzke* appears on its face to govern dismissal of *in forma pauperis* complaints as frivolous under 28 U.S.C. § 1915(d).  Even were it to apply, the

---

[3]    The court takes judicial notice here solely for the purpose of providing the narrative contained herein to afford uninformed readers the context of this Memorandum Decision.  Nothing so noticed has affected the outcome set forth in this Memorandum Decision.  As to the taking of such notice with respect to the ultimate conclusion in this matter, both parties may be heard on the propriety of the court so doing at the appropriate time.  Fed. R. Evid. 201(e).

7

City's description of the standard in *Neitzke* is incorrect. *Neitzke* expressly provides that a claim must be dismissed if it is clear that no relief could be granted under *any* set of facts consistent with the allegations, not just those facts in a complaint. *Neitzke*, 490 U.S. at 327. In short, when considering whether to dismiss under the standard espoused in *Neitzke*, a court is not limited to the facts alleged in the Complaint but may hypothesize a set of facts consistent with the allegations of the Complaint that might establish the requisites for a claim.

While it does not appear to the court that *Neitzke* is directly relevant here, the standard articulated in *Neitzke* works well when considering whether to dismiss with prejudice. The court is already empowered to dismiss "frivolous or transparently defective suits." *Hoskins v. Poelstra*, 320 F.3d 761, 763 (7th Cir. 2003).

Such dismissal should be without prejudice "[u]nless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004). If the standard in *Neitzke* is met, that no formulation of the facts and law could result in actionable relief, dismissal with prejudice would be appropriate as no amendment would cure the defect. The court will therefore consider *Neitzke* when determining whether to dismiss with prejudice.

B.     The Underlying Counts

As discussed briefly above, the Complaint consists of three Counts. The legal standards as applied to those Counts are as follows:

1.     *Count I: The Automatic Stay and Turnover Provisions*

At the outset, the court notes that the Plaintiffs have done themselves no favors here in the construction of the Complaint. Rather than follow the guidance offered in the Federal Rules of Civil Procedure, *see, e.g.*, Fed. R. Civ. P. 10(b) (urging a party to state each claim in a separate count to promote clarity), the Plaintiffs have stated essentially all of their claims in Count I of the Complaint. This makes ruling on the Motion more difficult than it should be.

Still, the City has not objected on this basis and the Complaint, while muddled, is not incomprehensible. As the Motion demonstrates, the City was still capable of understanding what the Plaintiffs seek. As such, the court will not require the Plaintiffs to replead the Complaint on this basis.

It does mean, however, that the court must consider Count I of the Complaint in multiple parts.

As noted above, when a debtor files for bankruptcy, there are two automatic consequences that are at play here. First, the Bankruptcy Code implements an automatic stay that protects both debtors individually, but also assets of debtors and bankruptcy estates. 11 U.S.C. § 362(a). Second, any entity in possession on the commencement of a case of property that a trustee may use, sell, or lease is required by statute to deliver that property to the trustee that property, or the value thereof, and account for the same. 11 U.S.C. § 542(a).

The Plaintiffs have alleged in Count I that the City's conduct has violated each of these statutory provisions. The court will therefore consider each of these causes of action in turn.

(a)      The Automatic Stay:  Section 362(a)

As noted above, commencement of a bankruptcy case gives rise to an automatic stay, 11 U.S.C. § 362(a), which, as the Seventh Circuit has stated, is a "powerful tool." *Fox Valley Const. Workers Fringe Ben. Funds v. Pride of the Fox Masonry & Expert Restorations*, 140 F.3d 661, 666 (7th Cir. 1998).  That stay is set forth in section 362(a) in a series of subsections, which, in pertinent part, are as follows:

> [A] petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—
>
> …
>
> (4)  any act to create, perfect, or enforce any lien against property of the estate;
>
> …
>
> (6)  any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;
>
> (7)  the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor;
>
> ….

11 U.S.C. §§ 362(a)(4), (6) & (7).[4]  As noted above, while the original complaint contained allegations under section 362(a)(3), after the Supreme Court in *Fulton* reversed in part the Seventh Circuit's ruling in *Thompson*, the Complaint was amended to omit that cause of action.

Often seen narrowly as a tool to protect debtors, the automatic stay is actually both that and a broader protection in favor of creditors.  While the stay does provide debtors a necessary "breathing spell from … creditors," H. Rep. No. 95-595, 95th Cong., at 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6297, "creditors also benefit." *Wood v. U.S. Dep't of Hous. & Urban Dev. (In re Wood)*, 993 F.3d 245, 249 (4th Cir. 2021).  "The stay preempts a 'race to the courthouse' and provides procedures for the fair allocation of the bankrupt's assets." *Id.*  As such, the stay "preclude[s] one creditor from pursuing a remedy to the disadvantage of other creditors . . . ." *Fox Valley*, 140 F.3d at 666 (*quoting* A.*H. Robins Co. v. Piccinin (In re A.H. Robins Co.)*, 788 F.2d 994, 998 (4th Cir. 1986)).

---

[4]      Section 362(a)(2) also provides that a creditor is stayed from enforcing against property of the estate a judgment obtained before the commencement of the bankruptcy case.  11 U.S.C. § 362(a)(2).  A number of judges in this District have determined that the City's lien at issue here is in the nature of a judicial lien for the purposes of applying section 544 of the Bankruptcy Code. *See, e.g., In re Mance*, 611 B.R. 857 (Bankr. N.D. Ill. 2020) (Cox, J.); *In re Wigfall*, 606 B.R. 784 (Bankr. N.D. Ill. 2019) (Doyle, J.).  To the court's knowledge, however, such rulings have not been broadened to encompass section 362(a)(2) and the Complaint here makes no allegations in that regard.

So fundamental is this latter protection that both the Seventh Circuit and the Supreme Court have allowed to stand bankruptcy court orders extending the scope of the stay to nondebtor suits when allowing them to proceed might allow individual creditors to interfere with the bankruptcy's collective process. *See, e.g., Celotex Corp. v. Edwards*, 514 U.S. 300, 310 (1995) (quoting the bankruptcy court's determination that the failure to enjoin would result in a "carrion feast by the victors in a race to the courthouse." *In re Celotex Corp.*, 140 B.R. 912, 915 (Bankr. M.D. Fla. 1992)); *Fisher v. Apostolou*, 155 F.3d 876, 883 (7th Cir. 1998) (affirming a bankruptcy judge's decision to enjoin a lawsuit that might "derail the bankruptcy proceedings" with "a race to the courthouse."). Recently the Seventh Circuit affirmed the essential nature of the automatic stay by permitting bankruptcy courts to enjoin such third-party actions when appropriate to carry out the provisions of the Bankruptcy Code. *Caesars Ent. Operating Co., Inc. v. BOKF, N.A. (In re Caesars Ent. Operating Co., Inc.)*, 808 F.3d 1186, 1188 (7th Cir. 2015).

While each subsection under section 362(a) prohibits different kinds of acts, there are cases of clear overlap between the provisions. *Daff v. Good (In re Swintek)*, 906 F.3d 1100, 1104 (9th Cir. 2018). As such, a creditor action might violate multiple sections of the automatic stay. *See, e.g., In re Oakhurst Lodge, Inc.*, 582 B.R. 784, 796 (Bankr. E.D. Cal. 2018) ("[A] single act can violate both the *in rem* rights of the estate and the *in personam* rights of the debtor.").

Such is the same with the Bankruptcy Code as a whole. Just because an action is addressed in one provision of the Bankruptcy Code does not mean that another might not apply. *Compare, e.g.*, 11 U.S.C. § 362(a)(4) (staying the creation and enforcement of liens in estate property postpetition) *with* 11 U.S.C. § 549(a) (allowing a trustee to avoid transfers or property of the estate occurring postpetition without court authority). Put another way, just because an invalid affixing of a lien might be avoided under section 549 does not mean the affixing isn't also a stay violation.

Each subsection of section 362(a) does, however, have its own unique wording and therefore its own unique predicates. As such, the court considers each subsection addressed by the Plaintiffs in Count I.

    (i)    *Section 362(a)(4)*

Section 362(a)(4) prohibits "any act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C. § 362(a)(4).

Here what is protected is "property of the estate." The filing of a bankruptcy case creates a bankruptcy estate consisting of "all legal and equitable interests of the debtor in property" and "[p]roceeds, product, offspring, rents, or profits of or from property of the estate." 11 U.S.C. §§ 541(a)(1) & (6). As Congress has stated, "[t]he scope of this paragraph is broad. It includes all kinds of property, including tangible or intangible property, causes of action, and all other forms of property currently specified . . . ." H.R. Rep. No. 595, 95th Cong., 1st Sess., 367 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6323; S. Rep. No. 989, 95th Cong., 2nd Sess., 82 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5868. As the Seventh Circuit has noted, "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of [section] 541." *In re Carousel Int'l Corp.*, 89 F.3d 359, 362 (7th Cir. 1996) (internal quotation and citation omitted). The City does not dispute that the Plaintiffs' vehicles fall within this broad scope and were therefore property of each of the Plaintiffs' respective bankruptcy estates.

For there to be a violation of section 362(a)(4), however, the City must have created, perfected or enforced *a lien* against such property of the estate.  11 U.S.C. § 362(a)(4) (emphasis added).  The Bankruptcy Code defines lien as a "charge against or interest in property to secure payment of a debt or performance of an obligation."  11 U.S.C. § 101(37).  Again, the City does not appear to dispute that its interest in the Plaintiffs' vehicles was a lien, *see, e.g.*, *Baines v. City of Chicago*, 584 B.R. 723 (N.D. Ill. 2018), though the validity and nature of said lien might be in dispute.  *See supra* n.4.

The essential question is whether the City's continued possession is an act to create, perfect, or enforce that lien.  That, the court will address in the discussion below.

(ii)     *Section 362(a)(6)*

Section 362(a)(6) prohibits "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case . . . ."  11 U.S.C. § 362(a)(6).

As section 362(a)(6) expressly applies to debtors and not assets, some courts have held that purely *in rem* actions do not violate section 362(a)(6).  *In re Bell*, Case No. 14-60510, 2014 WL 6913509, at *3 (Bankr. N.D.N.Y. Nov. 13, 2014) ("[Section] 362(a)(6) prevents only *in personam* actions against the debtor and does not prohibit *in rem* foreclosures on non-estate property.") (*citing In re Log, L.L.C.,* Case No. 10-80378, 2010 WL 4774347, at *5 (Bankr. M.D.N.C. Nov. 9, 2010) and *Everchanged, Inc. v. First Nationwide Mtg. Corp. (In re Everchanged, Inc.*), 230 B.R. 891, 893 (Bankr. S.D. Ga. 1999)).

Just because property is involved, however, does not mean that a creditor's actions are not as against the debtor personally.  For example, in *In re Kuehn*, 563 F.3d 289 (7th Cir. 2009), the Seventh Circuit determined that a university violated section 362(a)(6) when it refused to provide a transcript to a student who had an outstanding tuition owed to the school.  The court reasoned that the university had no other reason to deny the student's request but to collect on the student's debt.  *Id.* at 292–93.  As a result, the university's refusal to return the transcript, combined with some other facts shedding light into the university's motive (that the university was trying to induce the student to pay the tuition debt) amounted to violation of section 362(a)(6).

Similarly, in *In re Radcliffe*, 563 F.3d 627 (7th Cir. 2009), the Seventh Circuit ruled that a creditor violated section 362(a)(6) when it mailed a letter to a debtor that it would exercise its setoff rights until the debtor paid the prepetition debt.  The court found that this letter, combined with the creditor's refusal to return to property, amounted to not just a communication but a coercive act to induce a debtor to pay, in violation of section 362(a)(6).  *Id.* at 631.

Here, there is no dispute as to existence of a prepetition debt.  It remains for the Plaintiffs to show that the City's acts were directed against the debtor and whether the City's act amounted to an "act to collect, assess, or recover a claim."

(iii)     *Section 362(a)(7)*

Section 362(a)(7) stays "the setoff of any debt owing to the debtor that arose [prepetition] . . . against any claim against the debtor."  11 U.S.C. § 362(a)(7).

The Supreme Court has stated that there are three elements for a setoff to occur.  "(i) a decision to effectuate setoff, (ii) some action accomplishing setoff, and (iii) a recording if the setoff." *Citizens Bank v. Strumpf*, 516 U.S. 16, 19 (1995).  In *Strumpf*, the Court also found that there was an implicit fourth element, that the creditor must have intended the setoff to be permanent.  *See id.* (holding that a bank did not commit setoff because its administrative hold on a debtor's account was temporary while the bank sought relief from stay).

A party arguing violation of a setoff under 362(a)(7) must thus therefore prove all four elements.

(b)      Turnover Obligation:  Section 542(a)

Section 542(a) provides, in pertinent part, that anyone who has "possession, custody, or control" of bankruptcy estate property must deliver that property to the trustee and "account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate."  11 U.S.C. § 542(a).

"By its express terms, section 542(a) is self-executing, and does not require that the trustee take any action or commence a proceeding or obtain a court order to compel the turnover." 5 COLLIER ON BANKRUPTCY ¶ 542.02 (16th ed.); *see also Fitzgerald v. United States* (*In re Larimer*), 27 B.R. 514, 516 (Bankr. D. Idaho 1983).

A trustee must prove three elements to successfully argue a turnover obligation, that (i) the property in question belongs to the estate, (ii) an entity had control or possession of the property during the pendency of the bankruptcy case, and (iii) that the property is not of inconsequential value or benefit to the estate.  *Paloian v. Dordevic* (*In re Dordevic*), Adv. No. 20ap00340, Case No. 20bk09807, 2021 WL 4316728 at *4 (Bankr. N.D. Ill. Sept. 22, 2021) (Cassling, J.) (citations omitted).

Here, though not raised in the context of the Motion, to be successful, the Plaintiffs must also show that a debtor in chapter 13 accedes to the rights of trustees under section 542(a).

While much of the Bankruptcy Code and Bankruptcy Rules addresses rights in terms of what a trustee may do or not do, *see, e.g.*, 11 U.S.C. § 363(b)(1) ("a trustee . . . may use, sell or lease . . . property of the estate . . . ."); Fed. R. Bankr. P. 9019(a) ("[o]n the motion of a trustee . . . the court may approve a compromise or settlement."), that drafting shorthand is connected to debtors through other provisions of the Bankruptcy Code. *See, e.g.*, 11 U.S.C. § 1107("a debtor in possession shall have all the rights . . . , and powers, and shall perform all the functions and duties . . . of a trustee serving in a case under this chapter."); 11 U.S.C. § 1203 (same).  In a case under chapter 13, however, because of the unique nature of the chapter 13 trustee and the debtor each taking on a portion of those general rights, the connecting provision is different.

In chapter 13, the trustee's rights and duties are delineated in section 1302 and the debtor's rights and duties are delineated in section 1303.  In short, a trustee's duties in chapter 13 are mainly administrative and in the role of safeguarding the process.  It is the debtor who is responsible for administering the bankruptcy estate. *Smith v. Rockett*, 522 F.3d 1080, 1081 (10th Cir. 2008). Nonetheless, section 1303's express grant of authority to a debtor in a chapter 13 case contains only

12

a reference to "the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and 363(l) . . . ."  11 U.S.C. § 1303.

As a result, it remains to be determined whether a chapter 13 debtor may there enforce the provisions of section 542.  *See, e.g.*, Keith M. Lundin, *Lundin on Chapter 13*, § 50.1, at ¶¶ 4-6 (pointing out that the use of trustee in section 542(a) appears to be a drafting anomaly but leads to potentially absurd results).  This problem was not addressed by the Supreme Court in *Fulton* when it assumed remedies under section 542 could compensate for a lack of remedies under section 362.  *Fulton*, 141 S. Ct. at 591.

If a chapter 13 debtor cannot exercise rights under section 542 and a chapter 13 trustee has no authority over property of the estate, *Peterson v. Wells Fargo Bank, N.A.* (*In re Peterson*), 585 B.R. 1, 11 (Bankr. D. Conn. 2018) (gathering cases), having no remedies under section 362 could mean that there are no remedies at all for actions such as are alleged here in a chapter 13 case.  Further, section 542 is an automatic remedy for the bankruptcy estate as a whole but enforced only by the trustee (or possibly the debtor).  *Cf. Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 11 (2000) (finding that where the Bankruptcy Code afforded a right solely to a trustee under section 506(c), that right could not be extended to creditors).  The automatic stay, in turn, has been held to be enforceable by creditors as well as debtors and trustees.  *See, e.g.*, *Bandy v. DeLay* (*In re DeLay*), Adv. No. 16-07040, Case No. 14-71512, 2018 WL 1596883, at *14 (Bankr. C.D. Ill. Mar. 29, 2018); *In re Biesboer*, Case No. 08bk35834, 2010 WL 2940927, at *6 (Bankr. N.D. Ill. July 27, 2010) (Doyle, J.) (each relying on *St. Paul Fire & Marine Ins. Co. v. Labuzan,* 579 F.3d 533, 538 (5th Cir. 2009)); *see also Cable v. Ivy Tech State Coll.*, 200 F.3d 467, 472 (7th Cir. 1999) (holding that a chapter 13 debtor has standing to commence or continue any proceeding on behalf of the estate in any tribunal) (*citing* Fed. R. Bank. P. 6009) (overruled on other grounds).  Thus, having a remedy under section 542 is not the same as having a remedy under section 362 for creditors aggrieved by a violation.

Some courts have resolved this incongruity in holding that by granting chapter 13 debtors possession of estate assets and powers under section 363, such debtors must by extension have powers under section 542.  *See, e.g.*, *TranSouth Fin. Corp. v. Sharon* (*In re Sharon*), 234 B.R. 676, 687 (B.A.P. 6th Cir. 1999) ("[Sections] 303, 363, 542 and 362 work together to require and enforce the delivery of possession of the car to the Debtor in this Chapter 13 case."), a minority of others have excluded chapter 13 debtors from exercising remedies under section 542.  *Brown v. Addison* (*In re Brown*), 210 B.R. 878, 882 (Bankr. S.D. Ga. 1997).

These standards will be discussed further below in the context of the Plaintiffs' Complaint.

3.    *Punitive Damages and Sovereign Immunity*

(a)    <u>Punitive damages</u>

This court has thoroughly discussed the power of bankruptcy courts to issue punitive damages, as follows:

Civil contempt proceedings are coercive and remedial, but not punitive, in nature and sanctions for civil contempt are designed to compel the contemnor into compliance with an existing court order or to compensate the complainant for losses

13

sustained as a result of the contumacy." [*Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 737 (7th Cir. 1999)] (*citing Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826–28 (1994)). Damages awarded from civil contempt are therefore either coercive in an attempt to push a violating party into compliance with a court order, or remedial in an attempt to restore losses from a violation of a court order. *Jones*, 188 F.3d at 738. Regardless of the nature of the award, the sanction must relate to or have been caused by a violation of a court order. *Id.*

Without ruling on the ability of the bankruptcy court to issue punitive sanctions under section 105 of the Bankruptcy Code, the Seventh Circuit has cautioned bankruptcy courts against issuing punitive sanctions except where specifically authorized by statute. "Since punitive damages are—punitive, and it is punitive purpose that distinguishes criminal from civil contempt, section 362(h) implies that bankruptcy judges do have some criminal contempt power; but there is no corresponding grant of power in section 524 and the omission may have been deliberate. We can save the issue of the bankruptcy judges' criminal-contempt powers for another day, however." *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 917 (7th Cir. 2001).

The Seventh Circuit has provided some guidance on when criminal contempt may be available where not otherwise expressly authorized. In the context of a violation of the discharge injunction, it stated that "[t]he victim . . . might even be able to obtain punitive damages, though presumably only if he could prove criminal contempt, since punishment is the purpose of criminal but not of civil contempt." *Id.* at 916 (internal citations omitted).

*In re Kimball Hill, Inc.*, 595 B.R. 84, 100 (Bankr. N.D. Ill. 2019) (Barnes, J.), *vacated in part sub nom. Fid. & Deposit Co. of Maryland v. TRG Venture Two, LLC*, Case No. 19 C 389, 2019 WL 5208853 (N.D. Ill. Oct. 16, 2019), and *order reinstated,* 620 B.R. 894 (Bankr. N.D. Ill. 2020).

Section 362 contains just such a statutory authorization. 11 U.S.C. § 362(k)(1) ("[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, *may recover punitive damages.*") (emphasis added). Damages under section 362(k), first and foremost, require a violation of the stay. If there was a violation of the automatic stay, the court must determine whether the violation was willful and whether a debtor is entitled damages therefrom. If there is a willful violation of the stay for which the debtor is entitled to collect damages, the court must determine what damages are appropriate. *In re Ludkowski*, 587 B.R. 330, 337 (Bankr. N.D. Ill. 2018) (Barnes, J.).

As noted in *Kimball Hill*, another possible statutory source of this court's power to impose punitive damages is under section 105(a). Section 105(a) allows this court to "issue any order, process, or judgment that is necessary or appropriate to carry out provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). However, this power is not without its limits, as the *Kimball Hill* quote makes clear. In *Zale*, the Seventh Circuit specifically noted that "there is no corresponding grant of power in section 542 [to sanction] and [that] omission may have been deliberate." *Zale*, 239 F.3d at 917. Circuits are split on whether the bankruptcy courts can use section 105(a) power to punish a party. *Compare Charbono v. Sumski* (*In re Charbono*), 790 F.3d 80, 87 (1st Cir. 2015) ("We therefore

14

hold, without serious question, that bankruptcy courts possess the inherent power to impose punitive non-contempt sanctions for failures to comply with their orders.") *with Griffith v. Oles* (*In re Hipp, Inc.*), 895 F.2d 1503, 1511 (5th Cir. 1990) (providing an exhaustive analysis of the bankruptcy court's power to punish and cite for criminal contempt and concluding that the bankruptcy court has no punitive powers outside of the statute itself or, possibly, criminal contempt committed in the court's presence) *and Brown v. Ramsay* (*In re Ragar*), 3 F.3d 1174 (8th Cir. 1993) (affirming the bankruptcy court's authority to hold a party in criminal contempt under section 105(a)).

(b)     Sovereign immunity

Section 106 of the Bankruptcy Code states that, "[n]otwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in . . . Sections . . . 362 . . . [and] . . . 542 . . . ." 11 U.S.C. § 106(a)(1). Section 106 goes on to clarify that "[t]he court may issue against a governmental unit an order, process or judgment . . . including an order or judgment awarding a money recovery, *but not including an award of punitive damages . . . .*" 11 U.S.C. § 106(a)(3) (emphasis added).

While this may appear to lead to a straightforward dismissal of the Complaint's request for punitive damages, the conclusion here is not without complications. The court will discuss sovereign immunity in the context of the Complaint, below.

DISCUSSION

Having considered the legal theories at play here, the court now turns to the propriety of the Complaint in light of the Motion's arguments and the legal theories that govern.

The Motion can be viewed in two distinct categories. The first is those broad sweeping arguments that, if taken as true, might invalidate the Complaint as a whole or change the court's determination in fundamental ways. The second is the specific elements of the Complaint viewed in light of the traditional dismissal standards. The court will consider each category in turn.

A.     The Broad Sweeping Issues

1.     Fulton*'s Effect on the Plaintiffs' Claims*

As was noted above, when first commenced, this proceeding was in some respects a relatively simple one. The Seventh Circuit's controlling case law might have made the Plaintiffs' allegations that the City's refusal to return to them their vehicles violated section 362(a)(3) easy to adjudicate. *Thompson*, 566 F.3d at 703.

Under *Fulton*, the outcome is not so clear. In *Fulton*, the Supreme Court held that "the language of [section] 362(a)(3) implies that something more than merely retaining power is required to violate the disputed provision." 141 S. Ct. at 590. The City argues that the reasoning in *Fulton* should be applied to all of the other claims under section 362(a) and that all such claims should be dismissed.

The court declines to adopt the City's reasoning for three essential reasons: (a) *Fulton* is limited by its own terms to section 362(a)(3) and thus retention of the vehicles may still be a stay

15

violation; (b) The City may have committed other acts in violation of the automatic stay; and (c) The City's interpretation leaves debtors with virtually no immediate remedy and creditors with no remedy at all.

> (a)  *Fulton* is limited to section 362(a)(3).

As Justice Sotomayor points out in her concurrence in *Fulton*, however, there were clear limitations on the majority's ruling.  The City admits as much in its filing.  As she stated, "I write separately to emphasize that the Court has not decided whether and when [section] 362(a)'s other provisions may require a creditor to return a debtor's property."  *Id.* at 592 (Sotomayor, J., concurring).  She states expressly that causes of action under sections 362(a)(4) and (6) may nonetheless require the return of a debtor's property.  *Id.*  There remains a possibility that the City's continued retention alone may violate the other automatic stay provisions under section 362(a).

That observation is borne out in the majority's ruling, which recognized that exercise of control does not definitively rule out omissions that might qualify as "acts" in certain contexts, "control" meaning "to have power over."  *Id.* at 590.  The Court did not decide whether other automatic stay provisions under section 362(a) are also limited to prohibiting affirmative acts that alter the *status quo*.  Not only was a wider determination not procedurally before the Court, but the Court itself expressly noted the limited nature of its determinations.  *Id.* ("Nor do we settle the meaning of other subsections of [section] 362(a).  We hold only that mere retention of estate property after the filing of bankruptcy petition does not violate [section] 362(a)(3) of the Bankruptcy Code.").

The City's expansive reading of *Fulton* is based on the applicability of the words "act" and "stay", two out of three terms that helped the Court arrive at its interpretation of section 362(a)(3) in *Fulton*, to other provisions of the automatic stay under section 362(a).  It argues that the Court's interpretation of the two words must apply with full force to other provisions of the automatic stay.  As a result, it argues that violation of the automatic stay under provisions other than section 362(a)(3), also requires an affirmative act which the passive retention of the estate property is not.

To be clear, however, the Court in *Fulton*, interpreted the *combination* of three key terms "act", "stay", and "to exercise control over."  The phrase "to exercise control" is unique to section 362(a)(3) and does not appear in nor apply to other automatic stay provisions.  The City's argument therefore misses the context within which these terms were used.  As there remain plausible readings of these sections that do not preclude the Plaintiffs' Complaint and in light of the Supreme Court's own express limitations regarding the same, the court declines to dismiss the Complaint for this reason.[5]

---

[5]  The court is aware of one pre-*Fulton* ruling where the Bankruptcy Appellate Panel for the Ninth Circuit appeared to hold that mere retention of impounded vehicles amounted to an excepted act to perfect a lien under section 362(b)(3) and thus did not violate section 362(a)(4).  *Hayden v. Wells (In re Hayden)*, 308 B.R. 428, 435 (B.A.P. 9th Cir. 2004).  That holding is problematic for a number of reasons, not the least of which is Congress' clear intent to create an avenue for perfecting possessory liens without interfering with a debtor's possession.  11 U.S.C. § 546(b).  For those reasons and because the Supreme Court's own reservations in *Fulton*, this court would decline to follow *Hayden* even were it within this jurisdiction.

Accordingly, the effect of *Fulton* is limited to section 362(a)(3). *Fulton* does not expressly nor impliedly require dismissal of the Plaintiffs' other claims, as a matter of law. Such claims are not frivolous as there exist grounds upon which relief may be granted.

> (b)    The City may have committed other acts in violation of the automatic stay.

The City's argument that all violation of the automatic stay requires an affirmative act, even if true, is not dispositive here as the Supreme Court's ruling in *Fulton* also left open the possibility that inaction combined with other facts might nonetheless violate the automatic stay. Citing to the Seventh Circuit case *Kuehn*, 563 F.3d at 289, Justice Sotomayor's concurrence in *Fulton* raised the possibility that the City's refusal to relinquish the vehicle was to collect on the debt owed to the City in violation of section 362(a)(6). Recall that in *Kuehn*, the Seventh Circuit found that a university's refusal to provide to a student-debtor a transcript was to collect on the student's debt. The student had a contractual right to the transcript, was willing to pay the university to produce the transcript and the transcript had no intrinsic value to the university. The inaction of the university combined with facts shedding light into the university's motives for its inaction suggested that it violated section 362(a)(6), a prohibition on an act to collect prepetition debt.

The City's own municipal code appears to show the refusal to release vehicles to debtors is done in order to collect on the underlying debts. Judge Thorne walked through the municipal code sections in *In re Peake*, 588 B.R. 811, 820 (Bankr. N.D. Ill. 2018), *aff'd sub nom. In re Fulton*, 926 F.3d 916 (7th Cir. 2019), *vacated on other grounds and remanded sub nom. Fulton*, 141 S. Ct. 585, and *vacated on other grounds and remanded sub nom. In re Fulton*, 843 F. App'x 799 (7th Cir. 2021). She points out that the municipal code allows lienholders to obtain the release of the vehicles by paying only the towing costs, not the entire debt. *Id.* at 820 n.10. On the other hand, debtors must pay both the towing costs and the debt for the return of the vehicles. That the City seeks to collect the full amount of judgment debt from the debtor but not from others in relation to the release of the vehicle suggests that the City's refusal to return the vehicles might be to collect on the debtor's prepetition debt.

Furthermore, nothing in *Fulton* forecloses a debtor from pointing out other affirmative actions of the City. For example, as previously explained, the Seventh Circuit has determined that even the threat of offset is sufficient to violate the automatic stay. *Radcliffe*, 563 F.3d at 630. Thus, even where the creditor had not actually acted with respect to the estate's asset, the threat of doing so was sufficient to constitute a stay violation.

Even if the City's broad reading of *Fulton* were to prevail, the Plaintiffs' claims are not foreclosed as a matter of law. Under the *Neitzke* standard, there still exists a set of facts which relief may be granted for conduct violating the automatic stay.

> (c)    The City's interpretation leaves debtors with virtually no immediate remedy.

Bankruptcy cases, for good reason, are intended to be conducted expeditiously. The need for a quick remedy is essential to a debtor's fresh start, a central tenet of the Bankruptcy Code. For example, "[h]earings to determine [relief from stay] are meant to be summary in character. The statute requires that the bankruptcy court's action be quick." *In re Vitreous Steel*, 911 F.2d 1223,1232 (7th Cir. 1990).

This is in part because debtors are afforded, by statute, a limited period of time to reorganize their affairs.  Anything that interferes with that ability of the debtors to operate their estates and comply with their proposed plans can be fatal to their reorganization.  This is why, as discussed above, both the Seventh Circuit and the Supreme Court have permitted bankruptcy courts to enjoin third party suits that are otherwise outside the scope of the automatic stay.  *Celotex*, 514 U.S. at 310; *Caesars*, 808 F.3d at 1188; *Fisher*, 155 F.3d at 883.

As Justice Sotomayor points out, having a car is essential to maintaining employment. *Fulton*, 141 S. Ct. at 593 (Sotomayor, J., concurring).  Interference with a debtor's possession of such a car jeopardizes the debtor's chance for a fresh start and the recoveries of all creditors.  *Id.* (Sotomayor, J., concurring); *see also James*, 2014 WL 5785316, at *1 ("An automobile is virtually essential for a worker to engage in productive and beneficial employment which, in turn, improves the chances a debtor will complete his or her chapter 13 plan.").

Eliminating the application of the automatic stay to situations such as these removes the simplest and most direct method of compelling recalcitrant creditors to comply with their statutory duties.  Without a remedy under section 362, such debtors are left with either an action under section 542 (which, given the wording of the Bankruptcy Rules may require a longer, drawn out adversary proceeding to compel turnover), *see* Fed. R. Bankr. P. 7001(1), or a nebulous appeal to the general authority under section 105(a) (which in this Circuit at least has generated repeated cautions to trial courts against reliance upon unless there is a gap in statutory coverage).  *See, e.g., Kovacs v. United States*, 614 F.3d 666, 674 (7th Cir. 2010) (A bankruptcy court may not sanction under section 105 where the law elsewhere provides a remedy for sanctions).

Pursuing either remedy will result in delay in comparison to an action under section 362.  As Justice Sotomayor points out, that delay can have a major, detrimental effect on debtors and bankruptcy cases alike.  *Fulton*, 141 S. Ct. at 594 (Sotomayor, J., concurring).

Because of the essential time-sensitive nature of bankruptcy, the Seventh Circuit, in *In re Covey*, warned against the use of strategic gamesmanship to avoid the expeditious determination for bankruptcy matters.  650 F. 2d 877, 884 (1981).  That caution is even more important when the creditor in question is a government entity.

The court is not without sympathy for the position the City is in.  It has been the subject of a well-publicized fraud involving bankruptcy and impounded cars,[6] but that issue was resolved nearly a decade ago.  It has further been thwarted in its revenue collection efforts against Chicago residents when those residents are in bankruptcy.  In that latter sense, the City is no different from any other creditor.  But the City is different in important ways.  There is no question that government entities possess powers disproportionately larger than those of debtors and other creditors.  They are, as is discussed in more detail below, immune from punitive damages claims under section 106(a)(3) and thus are freer to flout basic bankruptcy requirements applicable to all creditors.

They may also, for example, when acting as an entity in commerce, legislate the outcomes they desire, binding debtors and creditors alike.  The federal government has done the same.  *See,*

---

[6]     *See* https://www.fbi.gov/chicago/press-releases/2013/chicago-man-arrested-for-allegedly-taking-cash-to-assist-with-filing-false-bankruptcy-case-to-avoid-city-auto-impound-fees (last visited December 2, 2021).

*e.g.*, 31 U.S.C. § 3713 (conferring upon the government, in nonbankruptcy scenarios, first priority creditor status over all other creditors). That is exactly what the City has done here when, under the guise of its home rule municipal authority, the City conferred upon itself—at least in name—possessory lien status so as to thwart the application of the Bankruptcy Code.[7] The major difference between the federal law and the City's law here is that Congress expressly worked within bankruptcy law while the City appears to have been attempting to circumvent it.

Other than with respect to sovereign immunity and where Congress has specifically legislated an outcome, government entities should be treated no differently than any other creditor when they engage in commerce. That is why courts have developed the so-called "pecuniary purpose" test. *Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 385–86 (6th Cir. 2001). When the government acts with pecuniary purpose, it is subject to the rules applicable to all creditors. The Seventh Circuit has determined previously that the City has just such a purpose with respect to cars impounded such as is alleged here. *In re Fulton*, 926 F.3d 916, 930 (7th Cir.), *cert. granted sub nom. City of Chicago, Illinois v. Fulton*, 140 S. Ct. 680 (2019), *and vacated on other grounds and remanded sub nom. Fulton*, 141 S. Ct. at 585 ("The City's act is focused on the debtor's financial obligation, not its safety concerns, and thus fails the pecuniary purpose test.").

The Bankruptcy Code, to which government entities acting with such a pecuniary purpose such as the City here are subject, arises out of the express grant of legislative authority to Congress in the Bankruptcy Clause of the Constitution. U.S. CONST. art. I, § 8, cl. 4 (authorizing Congress to enact "uniform Laws on the subject of Bankruptcies throughout the United States"). There are a variety of theories as to why the framers of the Constitution inserted the Bankruptcy Clause. By its own terms, the Clause appears to promote uniformity, which is in keeping with Full Faith and Credit, the Commerce Clause and other provisions sought by the Hamiltonians.[8] Some postulate that that uniformity was a debtor protection, while others see it "to prevent preferences to home-state creditors."[9] But, equally important, some have observed in the context of bankruptcies that when state legislatures controlled their own commerce, the federal Congress was unable to properly control the American market.[10]

When a state attempts to circumvent the effects of the federal bankruptcy laws, it is incumbent upon the courts to tread carefully before foreclosing the remedies of debtors and other creditors. As previously discussed, adopting the City's interpretation might not just delay, but given a narrow reading of section 542, may in fact extinguish both a debtor's and competing creditors' rights to remedies for violations of the stay such as are alleged in the Complaint. *See supra*

---

[7]     While the City's law in this regard has been held by at least one court not to be preempted by federal law generally, *Baines*, 584 B.R. at 723, it has not to the court's knowledge been determined whether such an unprecedented use of home rule municipal authority would withstand scrutiny under Illinois state law and whether the law in question, which unquestionably deprives competing creditors of some of their preexisting rights, was enacted with appropriate legislative due process for such a deprivation.

[8]     *See, e.g.*, Kurt H. Nadelmann, *On the Origin of the Bankruptcy Clause*, 1 AM. J.L. HIST. 215–28 (Oxford Univ. Press July 1957).

[9]     Stephen J. Lubben, *A New Understanding of the Bankruptcy Clause*, 64 CASE W. RES. L. REV. 319–411 (2013).

[10]     Randy. E. Barrett & Andrew Koppelman, *The Commerce Clause*, at https://constitutioncenter.org/interactive-constitution/interpretation/article-i/clauses/752 (last visited December 2, 2021).

Applicable Standards at B.1(b).  That result, as Justice Sotomayor points out, does not comport with the spirit of the Bankruptcy Code.  *Fulton*, 141 S. Ct. at 592–93 (Sotomayor, J., concurring).  This court agrees with Justice Sotomayor that, presuming the City continues its present approach to debtors in bankruptcy, the ultimate fix to these issues is a legislative one.  *Id.* at 595 (Sotomayor, J., concurring).  But this court is not so naïve as to assume that any such fix will be implemented soon, if at all.  There are clear errors in the Bankruptcy Code that Congress has yet to fix despite being known for decades.  Further, though the suggestion to expedite proceedings is a fine one, *id.* at 594-95 (Sotomayor, J., concurring), this court is not empowered to do so in violation of the very rules promulgated by the Supreme Court.

What this court can do is what it does here, refuse to adopt in the context of a motion to dismiss a reading of *Fulton* that is so expansive that it eliminates clear and obvious remedies against recalcitrant creditors.  For the purposes of the Motion, therefore, the court declines to adopt the City's interpretation of *Fulton* as foreclosing the Plaintiffs' claims under sections 362(a)(4), (6) and (7).

       2.       *Sovereign Immunity*

In Count II, the Plaintiffs seek punitive damages for the City's alleged violations listed in Count I.  The City argues it is immune from punitive damages under section 106(a)(3) of the Bankruptcy Code.

A question exists as to whether sovereign immunity may be raised at any time (as federal sovereign immunity is, *see United States v. U.S. Fidelity Co.,* 309 U.S. 506, 513 (1940)), or as an affirmative defense must be raised in accordance with applicable state law.  The City here has raised it in the context of the Motion and the Plaintiffs have not objected to that procedure.  The court will therefore consider it as set forth in the filings.

One might think that such an inquiry begins and ends with section 106 of the Bankruptcy Code, which states that, "[n]otwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in . . . Sections . . . 362 . . . [and] . . . 542 . . . ."  11 U.S.C. § 106(a)(1).  Section 106 goes on to clarify that "[t]he court may issue against a governmental unit an order, process or judgment . . . including an order or judgment awarding a money recovery, but not including an award of punitive damages . . . ."  11 U.S.C. § 106(a)(3).

The issue is, however, slightly more nuanced.

Today bankruptcy law is, for all intents and purposes, exclusively federal in nature.  There are, of course, obvious limitations.  The most pressing here is the principle of sovereign immunity of the States which is spoused in the Eleventh Amendment, U.S. Const. amend. XI, and elsewhere throughout federal law.  The precarious interaction between the Bankruptcy Clause and the Eleventh Amendment is one of the reasons that chapter 9 of the Bankruptcy Code (Adjustment of Debts of a Municipality) is written in such a hands-off way.  Lubben, *supra* n.9, at 397.  This interaction is one of the reasons that, when a State or subdivision thereof is affected by federal bankruptcy law, courts are charged with scrutinizing whether the affected entity is immune under the principles of sovereign immunity.  *See, e.g., In re La Paloma Generating Co.,* 588 B.R. 695, 717 (Bankr. D. Del. 2018), *aff'd sub nom. In re La Paloma Generating Co. LLC,* 607 B.R. 794 (D. Del. 2019).

In the context of bankruptcy, sovereign immunity and the propriety of section 106 have therefore been subject to a variety of different approaches.

In 1996, the Supreme Court in *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44 (1996), in the context of the Indian Commerce Clause, held that a grant of authority to Congress to pass laws in Article I of the Constitution is not, in and of itself, sufficient to abrogate Eleventh Amendment sovereign immunity. *Id.* at 55–56. It held that a "clear legislative statement" regarding Congress' intent to abrogate sovereign immunity was required. *Id.*

In reliance on *Seminole Tribe*, the Seventh Circuit in *Nelson v. La Crosse Cty. Dist. Atty.* (*State of Wis.*), 301 F.3d 820, 831 (7th Cir. 2002), held that "Congress did not validly abrogate State sovereign immunity when enacting [s]ection 106(a) pursuant to its Article I legislative power." *Id.* at 832. The Plaintiffs strangely rely on *Nelson* in attempting to counter the City's claim of sovereign immunity. The court is at a loss to understand how *Nelson*, even if controlling, would help advance the Plaintiffs' position. Were *Nelson* controlling, section 106(a) would be invalidated and the City would be immune from all aspects of bankruptcy law.

Later, however, the Supreme Court clarified that bankruptcy law is not subject to the same analysis as was set forth in *Seminole Tribe*. *See Cent. Virginia Cmty. Coll. v. Katz*, 546 U.S. 356, 379 (2006); *Tenn. Student Asst. Corp. v. Hood*, 541 U.S. 440, 450 (2004).

In *Hood*, based on the in-depth analysis provided by the Court of Appeals for the Sixth Circuit in the matter below, *see In re Hood*, 319 F.3d 755, 764 (6th Cir. 2003), *aff'd and remanded sub nom. Hood*, 541 U.S. at 440, the Supreme Court found that an exception to *Seminole Tribe* reasoning could be found in the bankruptcy court's *in rem* jurisdiction (akin to that in admiralty matters where the Court had previously found no Eleventh Amendment violation), stating that "[a]lthough both bankruptcy and admiralty are specialized areas of the law, we see no reason why the exercise of the federal courts' *in rem* bankruptcy jurisdiction is more threatening to state sovereignty than the exercise of their *in rem* admiralty jurisdiction." *Hood*, 541 U.S. at 450.

In *Katz*, the Supreme Court stated that:

The relevant question is not whether Congress has "abrogated" States' immunity in proceedings to recover preferential transfers. *See* 11 U.S.C. § 106(a). The question, rather, is whether Congress' determination that States should be amenable to such proceedings is within the scope of its power to enact "Laws on the subject of Bankruptcies." We think it beyond peradventure that it is.

*Katz*, 546 U.S. at 379 (footnote omitted).

While the Seventh Circuit hasn't retracted *Nelson*, subsequent Seventh Circuit cases rely on *Katz* and make no mention of *Nelson*. *See, e.g., Bulk Petroleum Corp. v. Ky. Dep't of Revenue* (*In re Bulk Petroleum Corp.*), 796 F.3d 667, 679 (7th Cir. 2015); *Toeller v. Wis. Dep't of Corr.*, 461 F.3d 871, 874 (7th Cir. 2006). As *Nelson* is expressly based on *Seminole Tribe*, it is therefore no longer the law of this Circuit. As such, both the Congress' determination that States are amendable to proceedings under sections 362 and 542 is controlling, but so too is Congress' determination that the States remain immune from punitive damages.

21

3.       *The Limits of the Court's Determination*

One broad-sweeping issue remains.

The parties are cautioned against engaging in extensive briefing of a matter before coming to the court on it. Here, the court set briefing on the Motion in the Briefing Order. Once that order was complied with, the briefing was concluded.

The Plaintiffs, however, sought to challenge the contents of the City's Reply in the Strike Motion. While this court is a self-scheduling one, the Plaintiffs' filing on short notice the Strike Motion and scheduling it for the Hearing did nothing, without further court order, than create a presentment date. The Strike Motion was not therefore before the court on its merits at the Hearing. Had the Plaintiffs wanted the Strike Motion to be considered on its merits at the Hearing, fully briefed, the Plaintiffs could have and should have, brought it to the court earlier—either on the court's earlier calls on cases of this nature or, if the circumstances including the court's availability warranted it, by application for an emergency hearing. That would have afforded the court and all other parties adequate opportunity to consider all the new, unexpected filings and could have potentially afforded the Plaintiffs the additional round of briefing it clearly wanted.

Instead, both the Plaintiff and the City presumed that the court would entertain what is essentially another round of briefing on the Motion without having been authorized by the court to enter into it. That did not happen and will not be allowed to happen in the future. When the court sets briefing on a matter, the parties are required to comply with that order. To deviate from a court's order, further order of the court is needed.

The hearing on the Strike Motion was therefore stricken by the court at the Hearing. Since that time, the Plaintiffs have not renoticed the Strike Motion for hearing on normal notice and thereby have not asked for a briefing schedule to be set. As a result, the Strike Motion is deemed moot in light of the ruling contained in this Memorandum Decision and will denied for that reason. The Strike Motion and the filings pertaining to it will not be considered by the court.

That said, if the subject of the Strike Motion was affirmative defenses asserted by the City and if such defenses are properly before the court, the law is clear that, unless jurisdictional in nature, such defenses must be asserted in accordance with the Civil Rule 8(c) and brought by way of a motion under the Civil Rule 12(c). *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020) ("[T]he appropriate vehicle for resolving an affirmative defense is a motion for judgment on the pleadings under Rule 12(c), not a Rule 12(b)(6) motion."). Standing, for example, is an affirmative defense. *LINC Fin. Corp. v. Onwuteaka*, 129 F.3d 917, 922 (7th Cir. 1997). It must be raised at the appropriate time and prosecuted in the appropriate manner.

The court will not entertain affirmative defenses generally on a motion to dismiss, but nor will it foreclose them for failure to state such in a motion to dismiss.

B.       The Counts of the Complaint Under the Traditional Dismissal Standards

1.       *Count I:  Claims under Sections 362(a)(4), (6) & (7) and 542(a)*

Even if the Plaintiffs' claims are not foreclosed by *Fulton* as a matter of law, the Complaint must also sufficiently allege factual allegations in order to survive the Motion.

22

(a)    Sections 362(a)(4) and (6)

The Complaint sufficiently plead claims under sections 362(a)(4) and (6). The Complaint alleges that the City continued to retain the Plaintiffs' vehicles even after the Plaintiffs filed for bankruptcy. It further alleges that the City demanded an upfront payment as a precondition for release of the vehicles and retained them to perfect its lien.

These allegations, if taken as true, are sufficient to raise plausible claims for violation of sections 362(a)(4) and (6). Whether the City can defeat these allegations on the merits, on the facts attendant thereto or on a defense under section 362(b) or otherwise, is not before the court today for the purpose of the Motion. The Plaintiffs may proceed with both claims.

(b)    Section 362(a)(7)

On the other hand, the Plaintiffs' section 362(a)(7) claim fails to meet the applicable standard. While setoff (offsetting debt owed *to the debtor* against a debt owed *by the debtor*) is preserved under the Bankruptcy Code, *see* 11 U.S.C. § 553(a), it remains stayed under section 362(a)(7).

To establish that the City's alleged actions violate section 362(a)(7), the Plaintiffs must show that a setoff in violation of that section took place. The Complaint, however, only alleges without support that the City's actions constituted a setoff.

The court finds no statutory or case law supporting the conclusion that mere possession of an estate property is a setoff. In fact, the case law that does exist is in the contrary.

In *Strumpf*, 516 U.S. at 16, the Supreme Court addressed a similar problem. The Court considered whether a bank committed setoff when it imposed an administrative hold on a debtor's account. The debtor had defaulted on the bank's loan, and the bank refused to honor the debtor's withdrawal by imposing an administrative hold while the bank sought relief from stay in the debtor's bankruptcy. *Id.* at 18.

The Court ruled that the refusal was not a setoff. Setoff required an intent to *permanently* offset a debtor's debt, but the bank's administrative hold was only temporary while it sought relief from stay. The Court stated:

> A requirement of such [permanent] intent is implicit in the rule followed by a majority of jurisdictions addressing the question, that a setoff has not occurred until three steps have been taken: (i) a decision to effectuate a setoff, (ii) some action accomplishing the setoff, and (iii) a recording of the setoff. *See, e.g., Baker v. Nat'l City Bank of Cleveland,* 511 F.2d 1016, 1018 (6th Cir. 1975) (Ohio law); *Normand Josef Enters., Inc. v. Conn. Nat'l Bank,* 230 Conn. 486, 504–05, 646 A.2d 1289, 1299 (1994). But even if state law were different, the question whether a setoff under [section] 362(a)(7) has occurred is a matter of federal law, and other provisions of the Bankruptcy Code would lead us to embrace the same requirement of an intent permanently to settle accounts.

*Strumpf*, 516 U.S. at 19.

23

The Complaint alleges nothing more than the City's refusal to return the vehicles.  Under *Strumpf*, the City's refusal is not a setoff, if only temporary.  As a result, the Plaintiffs' section 362(a)(7) claim fails as pleaded and must be dismissed.

However, under the standard set forth in *Neitzke* and *Barry Aviation*, the court can hypothesize a set of facts consistent with the allegations of the Complaint that might establish the requisites for a claim under section 362(a)(7).  Therefore, dismissal will be without prejudice and with leave to amend.

        (c)        <u>Section 542(a)</u>

The City's argument for dismissal of the Plaintiffs' claims under section 542(a) is two-fold.  First, the City's argues that there was no obligation to turn over the estate property under section 542(a) in the absence of an adversary proceeding against it to compel turnover.  Second, the City raises an affirmative defense that it was entitled to adequate protection and that retaining the vehicles and bargaining for the condition of the turnover was an effort to secure adequate protection.  Both of the City's arguments are problematic.

As to the first, the City had an express statutory obligation to return the estate property under section 542(a).  The City's interpretation flies in the face of the express language of section  542(a) and is, quite frankly, specious.  Taken at face value, the City's reading of its duties would mean that wherever a party is compelled to act by a statute, it could avoid its statutory duties until ordered to comply.  Debtors would be free to fail to file the documents required under section 521.  Creditors would be free to act in violation of the automatic stay.  Taxpayers could avoid paying their taxes.

That compliance with section 542(a) is required even absent an order is tautological.  It is so fundamental that it is set forth as such in Collier's as such.  5 COLLIER ON BANKRUPTCY ¶ 542.02 ("By its express terms, [section] 542(a) is self-executing, and does not require that the trustee take any action or commence a proceeding or obtain a court order to compel the turnover."); *see also Fitzgerald v. United States* (*In re Larimer*), 27 B.R. 514, 516 (Bankr. D. Idaho 1983).

The City's argument in this regard is akin to any lawbreaker claiming they are not violating the law unless caught.  It also flies in the face of what the City acknowledged was the case when pleading to the Supreme Court.  *Fulton*, 141 S. Ct. 585, 594 (2021) ("As even the City acknowledges, [section] 542(a) 'impose[s] a duty of turnover that is mandatory when the statute's conditions . . . are met.' Brief for Petitioner 37.").

The City can and should do better.

The court equally places no stock in the City's argument that its municipal code required the City to conduct itself in a certain manner.  The City enacted that code and therefore cannot shelter under it if the actions are inappropriate.  To hold otherwise would empower municipalities to attempt to regulate themselves out of bankruptcy responsibility—something the City's possessory lien statute appears dangerously close to.

As to the second, whether the City has an adequate protection defense remains to be seen.  It is raised prematurely for the purpose of this Motion.  In the context of an express, statutorily mandated action, the City's belief that it may have a defense to enforcement is insufficient to

mandate dismissal.  If the City chooses to ignore its statutory duties, it will have to face the consequences of such a choice.  For these purposes, that means litigating at least to a point where its claimed defenses are considered.

Accordingly, the Plaintiffs' section 542(a) claim survives.

The court does note, however, that in order for the City's defense to prevail, the City must establish it had a valid interest to be protected, whether it be under the municipal code or the common law.  The court has carefully considered Judge Thorne's analysis in *Peake* and finds it only partially convincing that the City had such an interest.  588 B.R. at 820.

To the extent that the City relies on its municipal code, it must demonstrate that it was authorized to confer upon itself secured creditor status in the manner it did.  As such a power appears on its face to be reserved for the Illinois legislature, the City must show where the state legislature has empowered divisions of the state to alter debtor/creditor relationships and interests in property.

Further, assuming the City is so authorized, the City must show that it afforded due process rights to the debtors and creditors in acting to deprive a portion of their property rights.  As the City points out in briefs, automatic deprivation by statute is problematic.

Finally, the court has yet to determine the actual nature of the City's statutory interest.  It notes that the competing courts in this jurisdiction are not agreed as to such.  Given the differing levels of enforceability of the City's claimed interest in the vehicles against debtors versus secured creditors and the fact that the City appears to be bootstrapping a possessory interest over other valid interests when the City's claim is otherwise unsecured, the City will bear a heavy burden on its defense.

All that said, the law is clear that the court may enforce compliance with a parties' statutory obligations under section 105(a) or the court's inherent power to enforce statutory violations by way of civil contempt.

2.      *Count II:  Punitive Damages*

Count II asks for punitive damages, attorneys' fees and costs and other equitable sanctions.

However, as was discussed above, the City is immune from the Plaintiffs' request for punitive damages under the express provisions of section 106(a)(3), which controls.

As Count II's only other requests (attorneys' fees and equitable relief) are duplicated in Count I, the result here is that Count II will be dismissed in its entirety.  *Van Vliet v. Cole Taylor Bank*, Case No. 10 CV 3221, 2011 WL 148059 at *6 (N.D. Ill. Jan. 18, 2011) (*citing to Norfleet v. Stroger*, 297 Fed. Appx. 538, 540 (7th Cir. 2008)).

As no repleading of Count II will cure the statutory prohibition at play, such dismissal will be with prejudice.  *Barry Aviation*, 377 F.3d at 687.

3.      *Count III: Class Certification*

The Plaintiffs' request certification of their claims as a class action under Civil Rules 23(b)(2) and (b)(3), and their respective counterparts in the Bankruptcy Rules. The Motion seeks dismissal of Count III based on the City's assumption that the other Counts will also be dismissed. The City does, however, reserve its right to respond to the substantive claim should the Plaintiffs' underlying claims survive. The Motion fails in this respect as the Plaintiffs' underlying claims survive.

That does not mean the class certification will be granted. While Civil Rule 23 is silent as to the procedure for class determinations (while at the same time setting forth in detail the standards for the same), the Seventh Circuit has at least implied that such certification should be brought by motion. *Priddy v. Health Care Serv. Corp.*, 870 F.3d 657, 660 (7th Cir. 2017).

As such, the court will set a deadline for the Plaintiffs to bring a motion to certify the class and a briefing with respect thereto, once the Plaintiffs are given the opportunity to amend the Complaint, and the City to respond. Now is not that time.

CONCLUSION

For the reasons stated above, as to Count I of the Complaint, the court, by separate order entered concurrently herewith, will deny the Motion as it pertains to claims under sections 362(a)(4) & (6) and 542(a), as well as the relief requested in relation to those violations in Count I. The court will nonetheless dismiss the claim under section 362(a)(7), but without prejudice and with leave to amend. As to Count II, the Motion will be granted and Count II will be dismissed, with prejudice. Count III survives, but the court will at a later date set a separate deadline for a motion to certify class and objections, if any, thereto. Finally, the Strike Motion is denied as moot.

Dated: December 6, 2021                    ENTERED:

_____
Timothy A. Barnes
United States Bankruptcy Judge

26